[Civ. No. 5757. Fourth Dist. Dec. 9, 1958.]

THE PEOPLE ex rel. Willard L. Chapman, Appellant, v. CITY OF GARDEN GROVE et al., Respondents.

Edmund G. Brown and Stanley Mosk, Attorneys General, Eugene B. Jacobs, Deputy Attorney General, Albert D. White and Emanuel Gyler for Appellant.

Joel E. Ogle, County Counsel (Orange), George F. Holden and Stephen K. Tamura, Assistant County Counsel, and Willard R. Pool, City Attorney, for Respondents.

SHEPARD, J.—This is an action in quo warranto by which plaintiff challenges the validity of the incorporation of the city of Garden Grove, California, and of the exercise by its officers of the municipal functions of that city.

The relator having duly obtained the permission of the Attorney General of the State of California did on December 28, 1956, file a complaint in the above-entitled matter alleging: that the city of Garden Grove is not validly incorporated and that the mayor and council members are functioning without lawful right; that on September 27, 1955, notice of intention to circulate a petition for proposed incorporation was filed with the Board of Supervisors of Orange County; that the boundaries proposed were substantially the same as those used in a prior unsuccessful attempt at incorporation, which culminated in defeat at an election held May 10, 1955; that on November 15, 1955, the county assessor certified the total number of owners in the proposed area of incorporation to be 8,222 and the total valid signers to be 2,390; that the total assessed value was $8,606,308, and the total petitioner value was $2,865,570; that on the same day the county clerk certified to the sufficiency of the petition; that 1,267 of the signatures came in by individually mailed envelopes, and the sufficiency of said signatures was in the process of review and verification of signatures and values for some weeks prior to November 15, 1955; that relator is informed and believes said 1,267 signatures were all by a single spouse for real property held in joint tenancy ownership of husband and wife, but that said county clerk and county assessor counted each as a whole qualified signature; and that on June 18, 1956, said board of supervisors unlawfully purported to incorporate said city of Garden Grove. Plaintiff asks that the incorporation be declared null and void and the officers prohibited from acting.

Defendants filed their answer denying illegality of the in-

corporation; denying that the boundaries are substantially the same as those of the prior unsuccessful attempt to incorporate; denying that the signatures were being checked by the clerk and assessor prior to filing; denying the single signature charges relating to alleged joint tenancy in 1,267 cases; alleging the affirmative defense (1) that the action is barred by the Second Validating Act of 1956 (chap. 16, 1956, First Extra Session); (2) validation of incorporation by the same act; (3) detailed recital of due proceedings had and lawful order of the board of supervisors incorporating the city; and lastly, a general objection to the legal sufficiency of the complaint.

Thereafter defendants moved for a summary judgment, filed affidavits in support thereof on the ground (1) that there was no triable issue, and (2) that the defendant municipality's incorporation had been validated by the Second Validating Act of 1956 (chap. 16, Extraordinary Session 1956). This motion appears to have been noticed originally for May 6, 1957, but at the request of plaintiff the time for preparation of the matter was continued over for hearing to May 29, 1957, on condition that the taking of certain depositions be also continued to a time after said date of May 29th.

█ " 'The issue to be determined by the trial court in consideration of a motion [for summary judgment] is whether or not [plaintiff or] defendant has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case.' " (*Coyne* v. *Kremples*, 36 Cal.2d 257, 260 [1] [223 P.2d 244].)

. . . . . . . . . . . .

█ "Summary judgment for plaintiff is proper only if the affidavits in support of his motion state facts that, if proved, would be sufficient to sustain judgment in his favor, and defendant does not 'by affidavit or affidavits . . . show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.' (Code Civ. Proc., § 437c; *Hardy* v. *Hardy*, 23 Cal.2d 244, 245, 247 [143 P.2d 701]; *Gardenswartz* v. *Equitable Life Assur. Soc.*, 23 Cal.App. 2d Supp. 745, 750, 751 [68 P.2d 322].)

. . . . . . . . . . . .

█ "Since under that section 'an answer may be stricken out, even though a perfect defense may be stated therein, unless the defendant by his affidavits shows facts to substantiate the defense' (*Cowan Oil & Ref. Co.* v. *Miley Pet. Corp.*, 112 Cal.App.Supp. 773, 778 [295 P. 504]; *Eagle Oil & Ref. Co.*

v. *Prentice*, 19 Cal.2d 553, 560 [122 P.2d 264]; *Grady* v. *Easley*, 45 Cal.App.2d 632, 641 [114 P.2d 635]; *General Inv. Co.* v. *Interborough Transit Co.*, 235 N.Y. 133, 142, 143 [139 N.E. 216], a failure to file affidavits showing such facts cannot be remedied by resort to the allegations or denials of a verified answer. The answer may be stricken and judgment entered in accord with the uncontroverted allegations of plaintiff's affidavits. (*Kelly* v. *Liddicoat*, 35 Cal.App.2d 559, 562, 563 [96 P.2d 186]; *Bank of America* v. *Oil Well Supply Co.*, 12 Cal.App.2d 265, 270 [55 P.2d 885]; *Galusha Stove Co.* v. *Pivnick Const. Co.*, 132 Misc. 875 [230 N.Y.S. 720, 721].)''

It therefore becomes necessary, in order to properly analyze the criticism of the summary judgment in this case, to give a rough outline of the allegations of the affidavits.

The affidavits filed by defendants in support of the motion generally recite, with copies of supporting documents attached, the fundamental steps leading to incorporation, viz: the filing on September 27, 1955, of a notice of intention to circulate a petition for incorporation; the passage of a resolution directing notice thereof; the service of the notice on nearby cities; the filing on November 15, 1955, of the petition for incorporation with affidavits of genuineness of signatures; passage of the resolution directing the ascertaining of signatures and boundaries; certificate of assessor regarding assessed values; certificate of clerk regarding signatures and boundaries; the resolution of November 15, 1955, reciting such petition and such service and directing publication of notice; the resolution of November 29, 1955, repeating the direction for notice and fixing December 20 as the time for hearing; the resolution of January 3, 1956, reciting the facts of hearing and fixing boundaries, and election date of March 6, 1956, prescribing notice and further procedure; January 17, 1956, resolution rescinding order of January 3, 1956, and fixing new date of February 8, 1956, for a hearing and notice thereof; minutes of the hearing of February 8, 1956, reciting objections to petitions by mail and challenging jurisdiction of the board of supervisors; minutes of continued hearing of February 10, 1956, reciting inferential challenge to five signatures, and the finding of county counsel that signatures were sufficient; resolution of February 10, 1956, reciting previous proceedings, objections, hearing of evidence, and finding petition and signatures sufficient and boundaries proper, and calling the election for April 17, 1956, prescribing notice of procedure therefor;

resolution of April 24, 1956, declaring the returns, finding 5,780 votes "for incorporation" and 2,346 votes "against incorporation," and reciting votes cast for council; resolution of June 15, 1956, declaring incorporation and election of officers; affidavit of clerk of incorporation, certificate of boundary description, certificate of completion, and formal recordation on June 18, 1956.

Plaintiff filed five counteraffidavits as follows: One by Joan Boris stating affiant checked the petitions and found a portion thereof consisted of only one name to a sheet; that she transposed therefrom to other slips of paper the name, address and assessor's code number, then secured property description belonging to each and assessed valuation from the county assessor, and turned all written information over to Emanuel Gyler, attorney for plaintiff. One by W. T. Wightman of Title Insurance and Trust Company, alleging he checked certain slips (source and dates not identified) to determine owners of property on each name supplied, and that he attached to his affidavit a list showing the description of property and names of owners. (In their briefs, both plaintiff and defendant use 916 as the number of signatures for land where another joint tenant is involved and we therefore assume that figure for purposes of this opinion.)

One by Emanuel Gyler that he turned the slips of paper received from Joan Boris over to Title Insurance and Trust Company to check ownership.

A second affidavit from Emanuel Gyler that he took depositions of defendant Harry Louis Lake, of county assessor Hugh J. Plumb and of county clerk B. J. Smith; that said Harry Louis Lake will testify that there were two types of petition, one type providing for only one signature to each page; that all single-page signatures came through the mail; that no effort was made by the committee supporting incorporation to determine genuineness of single-page signatures; that said B. J. Smith will testify that petitions were handed to him during the forenoon of November 15, 1955 in the presence of all members of the board of supervisors; that he had seen the petitions at least four weeks before in the office of the county assessor being checked for sufficiency; that he never delegated single signatures to anyone else, did not advise assessor how to determine qualified signers or effect of joint tenancy on single signatures, sent petitions to assessor November 15, 1955 and assessor shortly sent back a letter with information of total land value in proposed incorporation

area, value signed for, total number of owners and total valid signers; that with these was a certificate from the county surveyor on the boundaries; that county counsel prepared the certificate of sufficiency signed by said clerk B. J. Smith on November 15, 1955; that Hugh J. Plumb, the county assessor, will testify that he wrote the letter of November 15, 1955 re total land value signed for, total number of owners and total valid signers; that petitions were received by his office for checking at least 30 days prior to November 15, 1955; that others were left for checking during the 30-day interim; that this was standard procedure in his office; that during the checking of the signatures he was not concerned with the genuineness of the signatures; that he could check the sufficiency of a petition in 30 days; that his records do not cover information on joint tenancy; and that his common procedure was to list only one name.

In a third affidavit by Emanuel Gyler he asserts that in examining exhibits in the board of supervisors' office he found certain records not attached to defendants' affidavits, to wit: notice of intent to circulate petition for incorporation, marked filed September 27, 1955; affidavit of Dean Eastman, O. A. Peters and Clara Mae Murphy, owners in fee or by contract of purchase that all signatures to petition are genuine; petition to exclude certain areas filed December 16, 1955; that subsequent to December 16, 1955, numerous letters, postcards and additional petitions to exclude were filed; that on January 3, 1956 a petition by 80 signers asking to withdraw names from petition for incorporation was filed; that he found one group of single-page signatures containing 31 packages; that each package had on the first page the total number of valid signers written at the top, and that the total number of such signers was 1,267; that the order for incorporation was filed with the secretary of state on June 18, 1955; that the affidavit of completion was filed by the clerk with the county recorder; and that the judgment in *Brown* v. *Board of Supervisors* was entered on July 2, 1956.

1. Appellants contend that it was an abuse of discretion for the court to grant a summary judgment because plaintiff's verified complaint and plaintiff's counteraffidavits set forth in detail triable issues of fact.

It is perfectly true that the court in considering a motion for summary judgment is concerned only with the question of whether or not there are triable issues of fact, and does not in the process of passing on a summary judgment attempt

to determine the truth or falsity of any issues which have been established. (*Coyne* v. *Kremples, supra.*) Plaintiff contends that the trial court can consider a verified pleading as an affidavit to support the existence of issues on the hearing of a motion for summary judgment, and cites *Osborn* v. *Whittier*, 103 Cal.App.2d 609 [230 P.2d 132] ; *Hiller* v. *Collins*, 63 Cal. 235 ; *Falkinburg* v. *Lucy*, 35 Cal. 52 [95 Am.Dec. 76] ; *Bank of America* v. *Williams*, 89 Cal.App.2d 21 [200 P.2d 151] ; 2 Cal.Jur.2d, Affidavits, 616, 617. None of the cases cited by plaintiff in support of this assertion involve summary judgments. In the Osborn case, a dismissal was had after demurrer was sustained. The Hiller case involved the denial of a motion to dissolve an injunction. The Bank of America case involved an order granting a temporary injunction and denying a motion to dissolve an injunction against defendants. By section 437c, Code of Civil Procedure, it is provided that a motion for summary judgment shall be supported by affidavit, and the judgment may be entered unless the other party ''by affidavit or affidavits shall show such facts as may be deemed . . . to present a triable issue of fact.'' It is further required that the facts stated shall be within the personal knowledge of the affiant. In *Coyne* v. *Kremples, supra,* the Supreme Court quite clearly answered this question when it said :

''Defendant contends . . . that if the allegations of fact in the affidavits in support of the motion for summary judgment are controverted by the denials in a verified answer, the motion must be denied even though the defendant files no affidavits in opposition thereto . . .

''So construed, section 437c would be meaningless. 'It is not the purpose of the procedure under section 437c to test the sufficiency of the pleadings.' . . . a failure to file affidavits showing such facts cannot be remedied by resort to the allegations or denials of a verified answer.''

We are of the view that in considering whether the triable issues are present the court may not consider the allegations of the pleadings except where they are not controverted by affidavits on either side.

■ 2. Appellants contend that the presence of 916 joint tenancy signers renders the petition insufficient by 124 signatures. Preliminarily, it should be noted that the affidavit proof concerning these joint tenancy signatures is defective in that Wightman does not say he examined the list of names

produced from the assessment roll by Joan Boris, nor that this was the list received from Emanuel Gyler.

Passing such defect, however, for the purpose of reaching any possible merit contained in the point, we have examined the record and we find that the joint tenants in each case were husband and wife. Thus it is clear that there were no more than two owners to each parcel of property and if the petition is given credit only for one-half of the 916 signatures thus attacked (each signer would certainly own not less than a half interest), the deduction thus made of 458 signatures would still leave a surplus of more than 300 valid signatures for the petition. ''A joint interest is one owned by two or more persons in equal shares.'' (Civ. Code, § 683.)

Furthermore, and much more important is the fact that Government Code, section 34306, which directs the clerk to certify signatures and boundaries, provides that ''. . . Except to the extent that proof to the contrary has been submitted to him, the clerk in ascertaining whether the petition is signed by the requisite number of qualified signers may assume that the assessees on the last equalized assessment roll of the county are the qualified signers as herein defined.''

There is no showing whatever that the sole owners given on the assessment roll were not those signed on the petition. In fact, contents of plaintiff's affidavits on this subject can only be construed to the effect that the assessment roll did in fact contain only the name of the petition signer as the owner.

Since Government Code, section 34303, fixes a requirement of ''25 percent of the qualified signers, representing 25 percent of the value of the land included in the proposed city limits, as such value is shown on the last equalized assessment roll of the county,'' and the clerk is authorized by said section 34306 to use said assessment roll in certifying qualified signers, and since the uncontradicted facts shown by the affidavits are that the clerk did do this, the decision of the board of supervisors on the sufficiency of the signatures and the petition would be correct.

3. Plaintiff next contends that there were 1,267 signatures received through the mail and that they were, therefore, ''not circulated'' as provided by Government Code, section 34305. There is no allegation that the signatures are not in fact the genuine signatures of the persons they purport to represent. The record contains the required statutory affidavit of three property owners to the veracity of the signa-

tures. The board of supervisors' action was based on sufficient evidence.

4. Plaintiff also contends that the checking of signatures prior to the date of formal filing would in some way vitiate the petition. We cannot so hold. The preliminary checking of signatures to any petition, having strict numerical qualification necessities, is one of the most rudimentary and common precautions that any prudent person would take before offering the petition for formal filing. Such preliminary · checking is not an official filing, and the record in this case does not in any way show that there was an official filing prior to November 15, 1955. Again, we note there is no allegation that the signatures on any of them are, in fact, false and there is no allegation of fraud. The ruling of the board of supervisors was, therefore, correct.

5. In addition, it is clear that all of these matters relating to validity of signatures were factual matters presented to the board of supervisors for decision and that as against collateral attack such decision of the board of supervisors is, in the absence of fraud, conclusive. In this case there was no charge of fraud. The portion of the affidavits relating to what certain persons would testify to if a trial were held, does not in our opinion fulfill the requirement of Code of Civil Procedure, section 437c that the facts alleged in the affidavit must be within the personal knowledge of the affiant. But, even conceding that the affidavits were sufficient in this respect, a careful reading of them brings only the conclusion that there is some indirect inuendo of irregularity. (*Fresholtz* v. *Board of Trustees*, 208 Cal. 502 [282 P. 501]; *People* v. *Town of Loyalton*, 147 Cal. 774, 779 [82 P. 620]; *People* v. *Los Angeles*, 133 Cal. 338, 342 [65 P. 749]; *People* v. *City of Belmont*, 100 Cal.App. 537, 542 [280 P. 540]; *People* v. *City of Whittier*, 133 Cal.App. 316, 324 [9] [24 P.2d 219].)

*Hubbell* v. *City of Los Angeles*, 142 Cal.App.2d 2 [297 P.2d 724], does not in our opinion furnish any contrary rules of law, considering the circumstances of that case.

6. Plaintiff next contends that the allegations of the complaint that the boundaries of Garden Grove on the election here under contest were substantially the same as those used in a prior unsuccessful election of May 10, 1955, created a triable issue. Defendant responds that Government Code, section 34325.1, upon which plaintiff relies for this assertion, did not become effective until July 1, 1955; that the wording of the section is cast in the present tense; and that the

Legislature evinced by its wording no intent that said section should be given retrospective application to allegations which had occurred prior to its effective date. ██ " 'A retrospective law is one that relates back to a previous transaction and gives it some different legal effect from that which it had under the law when it occurred.' " (*Ware* v. *Heller*, 63 Cal.App.2d 817, 821 [2] [148 P.2d 410].)

██ "It is a general rule of statutory interpretation that a statute will always be given prospective effect unless the intention is clearly shown that it should be considered to operate retrospectively." (*Botts* v. *Simpson*, 73 Cal.App.2d 648, 650 [167 P.2d 231] (Teacher Tenure) ; *Scott* v. *County of San Mateo*, 27 Cal.App. 708, 713 [151 P. 33] (School District Boundaries) ; *Berg* v. *Traeger*, 210 Cal. 323 [292 P. 495] (Municipal Court Appeal) ; *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388, 393 [5] [182 P.2d 159] (Industrial Accident Liability) ; *Chesin* v. *Superior Court*, 142 Cal.App.2d 360, 364 [2] [298 P.2d 593] (Auto Accident Liability) ; *Rafferty* v. *City of Covina*, 133 Cal.App.2d 745, 755 [7] [285 P.2d 94] (City Annexation).

██ It is our opinion that neither the language of the statute nor the circumstances of this case compel any retroactive application of said Government Code, section 34325.1, and we are of the opinion that it does not operate and was not intended by the Legislature to operate to render void an incorporation under the circumstances here present.

██ 7. Defendant lastly contends that the "Second Validating Act of 1956" (chap. 16, 1956, Extraordinary Session [in effect July 5, 1956]) effectively validated the incorporation of defendant city. Plaintiff contends this is not so because the act contains the reservation in section 7(d) thereof that "This act shall not operate to confirm, validate, or legalize any act, proceeding, or other matter the legality of which is being contested or inquired into in any proceeding now pending and undetermined or which may be pending and undetermined during the period of 30 days from and after the effective date of this act . . ."

*Brown* v. *Board of Supervisors*, (Superior Court, Orange County, No. 67990) brought to test the validity of preelection proceedings in this incorporation, was filed March 12, 1956. Judgment was entered against contestants July 2, 1956, denying the petition for writ of prohibition; a motion for a new trial was made; an appeal to the Fourth District Court of

Appeal was dismissed; and a petition for hearing before the Supreme Court was denied on July 16, 1957.

In any statutory interpretation one of the most cogent guides to observe is the purpose of the act. Literal interpretation of statutory language ofttimes brings absurd results, entirely contrary to the real intent of the Legislature. We believe said section 7(d) was designed to prevent the validating act from interfering with immediately pending litigation. The case of *Brown* v. *Board of Supervisors* was in fact pending in our opinion, and the validation was suspended and inoperative as to that case. However, such suspension of the validation related only to the pendency of *Brown* v. *Board of Supervisors*, not to some other case that might be commenced at some later or different date involving other parties. If this were not true, action after action might go on and on and on ad infinitum, providing one was commenced before the termination of the other. We do not think the Legislature intended any such result at all. (*People* v. *City of Carlsbad*, 128 Cal. App.2d 77, 85 [274 P.2d 740].)

In respect to the six months' statutory limitation, we think the general trend of legislative purpose has been to distinguish in these validation acts between the curative power available to the Legislature in those respects in which the Legislature could have constitutionally dispensed with the procedure sought to be cured, and those procedures which it could not have dispensed with. Thus there are left to the operation of a reasonable statute of limitations those matters which would have been of a constitutionally compulsory nature. Sometimes in cases of this kind the term "jurisdictional" is used (*City of Fairfield* v. *Hutcheon*, 33 Cal.2d 475, 479 [202 P.2d 745]; *Board of Supervisors* v. *Cothran*, 84 Cal.App.2d 679, 686 [191 P.2d 506].) Applying this reasoning, we believe the "Second Validating Act of 1956" has effectively validated the incorporation of Garden Grove at least insofar as such incorporation might be affected by section 34325.1.

We have here a case in which the face of the record shows ample compliance with preelection statutory procedure, a duly noticed and fairly held election and overwhelming vote by the voter inhabitants in favor of incorporation, elected officers entering upon their lawful duties with all the myriads of ensuing complications, tax levies, employment liabilities, debts and credits, a citizenry investment movement and commitments that always attend when several thousand people adjust themselves to the mutual responsibilities and privileges

of participation in life within a municipal corporation. We have a case in which substantially all of the alleged technical defects of the proposed incorporation were attacked by an action before the superior court before the election was held, in which action that court at a later date rendered judgment holding said preelection proceedings valid. The appeal from that judgment was by this court dismissed and a hearing denied by the Supreme Court. Res adjudicata was not here pleaded, but we have no doubt the direction of the lives of the citizens of Garden Grove were affected by their knowledge of that decision, just as they were affected by the knowledge of the election. As against this picture we have objections to certain technical phases of the preelection procedure. Most of the material in plaintiff's counteraffidavits is technically insufficient to meet the requirements of section 437c, Code of Civil Procedure, regarding affiant's personal knowledge. But, even though this were not true and assuming all of the second and third-hand hearsay to be true and various broken links in the chain to be repaired, there is still nothing presented which shows, of itself, any false or fraudulent misbehavior nor any lack of notice, knowledge or information to the people of the community who voted on the incorporation. We think that a trial court in determining a question as to whether or not there is any real triable issue should have all these matters in mind.

From an entire examination of the record we are satisfied there is no triable issue, and that the order of the trial court granting the summary judgment was correct and just.

The order appealed from is affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 4, 1959.

---

*Assigned by Chairman of Judicial Council.