[Civ. No. 10954. Third Dist. July 19, 1965.]

WESTERN TITLE GUARANTY COMPANY, Plaintiff and Respondent, v. SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT et al., Defendants and Appellants.

816

Thomas C. Lynch, Attorney General, and N. Eugene Hill, Deputy Attorney General, for Defendants and Appellants.

Downey, Brand, Seymour & Rohwer, John F. Downey and James A. Willett for Plaintiff and Respondent.

REGAN, J.—Respondent Western Title Guaranty Company brought this action to reform a deed given by its predecessor in interest to appellants Sacramento and San Joaquin Drainage District and the Reclamation Board of the State of

California, to remove a cloud on and quiet title to land contained in said deed and for declaratory relief. Appellants appeal from a judgment in favor of respondent decreeing reformation of the deed and quieting its title.

The levee along the Sacramento River needed strengthening. The appellant district, which is managed and controlled by appellant Reclamation Board of the State of California, entered into a contract on August 12, 1940, with respondent's predecessor in interest, Madel J. Catching, for an easement and right of way for levee construction on her land, for which she was to be compensated at a price of $500 per acre together with the sum of $2,804.50 to compensate for improvements on said property. The land to be taken consisted of 3.591 acres. She executed and delivered a deed containing a metes and bounds description and was paid the sum of $4,600, the full sum of money agreed upon, to wit, $2,804.50 for improvements and $1,795.50, being $500 per acre for 3.591 acres.

While the work was in progress, by a letter dated August 18, 1940, to the California Debris Commission, Madel Catching stated as follows:

"Confirming my conversation to your Mr. Hart on August 16th, this will be a request and authorization to you that you make the changes as described below on my property:

"At the intersection of the proposed land side toe of the retaining levee as shown on your map dated July, 1940, covering the construction of the East levee of the Sacramento River from the Southerly limits of the City of Sacramento South 3200 feet, with the fence line on the Westerly side of the paved highway near the 'Japanese School' as shown on your map dated July, 1940, change the allignment [*sic*] of said proposed land side toe so as to run along the fence line adjacent to the paved highway Southerly from said intersection to my South line, thence Westerly to the existing levee on the river bank. You are then to fill by hydraulic pumping all of the area within said proposed land side toe to existing levee on the river bank with sand so that the approximate level of said sand at the land side toe along paved highway will be at the approximate elevation of the top of the pavement on the highway. It is understood by me that the sand fill thus made will slope from the discharge point near the present levee to the paved highway and will not be level.

"The proposed fill above described will be without expense to me and the right herein given to the Government for mak-

ing said fill shall not be charged for or bear any claim for compensation for rights of way. It is also understood that my presence [*sic*] fence line along the paved highway Southerly from the original proposed land side toe will not be removed.''

The sand fill was done as authorized and requested and was on a portion of the excess land in the Catching deed which constitutes the land alleged to have been included by error.

The actual metes and bounds description used in the deed of the land conveyed by Madel Catching encompassed an area of 11.81 acres, although after the description there appears the following legend: ''Parcels Nos. 1 and 2 containing 3.591 acres, more or less, of new land as it existed before enlargement in 1940.'' (Note—the only land described in the deed is that in Parcels 1 and 2.)

The alleged misdescription in the Catching deed was discovered in September 1959, by respondent, and the trial court found the failure to discover this mistake was not due to any lack of reasonable diligence on the part of respondent or of its predecessors, and the trial court further found that neither appellant had asserted any claim to or dominion over any of the questioned property and that respondent and its predecessors in interest had for more than 20 years been in exclusive and uninterrupted possession of the property in question except for the appellants' easement, which is not a matter for consideration in the cause before us.

Respondent commenced its action on July 16, 1962, and appellants by cross-complaint also sought to quiet title to the property.

Appellants contend that the state is immune from suit in quiet title, declaratory relief and reformation; that respondent's causes of action in reformation and declaratory relief are barred by the statute of limitations and that such causes of action being barred by the statute of limitations, respondent's cause of action for quiet title, being merely incidental thereto, fails also.

Appellants state their first issue as follows: ''Whether the doctrine of sovereign immunity applies to suits in quiet title, declaratory relief and reformation when those causes of action are brought against a state agency holding record title to land acquired for a public purpose under that agency's statutory duty.''

■ The Sacramento and San Joaquin Drainage District is a state agency and as such has whatever immunity from suit the state itself has. (*Western Assurance Co.* v. *Sacramento & San Joaquin Drainage Dist.*, 72 Cal.App. 68 [237 P. 59]; *Irvine* v. *Sacramento & San Joaquin Drainage Dist.*, 49 Cal.App.2d 707 [122 P.2d 320].) ■ Section 8503 of the Water Code allows the district to be sued. "The district is a body corporate and politic and may sue and be sued." The district and Madel Catching entered into a contract. ■ The deed from Madel Catching to the district was a contract between the district and the grantor which inured to the benefit of successors in interest of the property. (*Firth* v. *Los Angeles Pacific Land Co.*, 28 Cal.App. 399, 403 [152 P. 935]; *Rhine* v. *Ellen*, 36 Cal. 362, 371; *MacFarland* v. *Walker*, 40 Cal.App. 508, 512 [181 P. 248]; *Deterding* v. *United States*, 69 F.Supp. 214.)

■ "When the state makes a contract with an individual it is liable for a breach of its agreement in like manner as an individual, and the doctrine of governmental immunity does not apply." (*Souza & McCue Constr. Co.* v. *Superior Court*, 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338].) And in *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224, the court stated (at pages 230-231 [11 Cal.Rptr. 97, 359 P.2d 465]) : "A school district, however, may be liable for breach of contract where its governing body, acting as such and complying with required formalities, either expressly repudiates a contract or does some act which under generally accepted principles of law prevents the performance of the other contracting party."

As early as 1894, we find in *Chapman* v. *State of California*, 104 Cal. 690, the court stating (at page 696 [38 P. 457, 43 Am.St.Rep. 158]) : "We are entirely satisfied that plaintiff's cause of action, as alleged in the complaint, arises upon contract, and that the liability of the state accrued at the time of its breach . . . but the right to sue the state has since been given by the act of February 28, 1893, and in so far as that act gives the right to sue the state upon its contracts, the legislature did not create any liability or cause of action against the state where none existed before. *The state was always liable upon its contracts,* and the act just referred to merely gave an additional remedy for the enforcement of such liability, and it is not, even as applied to prior

contracts, in conflict with any provision of the constitution.'' (Italics added.)

Appellants contend the state may not be sued in declaratory relief, citing as authority *Bayshore Sanitary Dist.* v. *County of San Mateo,* 48 Cal.App.2d 337 [119 P.2d 752], and allege no authority specifically authorizes such suit. They contend the language of section 1060 of the Code of Civil Procedure, which reads as follows: ''Any person interested under a deed . . . or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract'' is conclusive that the state is not a ''person'' within the meaning of the statutes dealing with the private rights of private persons, citing for that proposition *Hoyt* v. *Board of Civil Service Comrs.,* 21 Cal.2d 399 [132 P.2d 804], and *Bayshore Sanitary Dist.* v. *County of San Mateo, supra,* 48 Cal.App.2d 337, and thus there is no authorization for suits seeking declaratory relief, as well as those seeking reformation or quiet title. In the *''Hoyt''* case the court states (at pp. 402-403) :

''In the *Bayshore* case, *supra,* after noting that the statute authorizes the bringing of such an action by one 'person' against 'another' person, the court relied upon a general doctrine of statutory construction in concluding that the word 'person' should not be held to include any political subdivision of the state in the absence of an express indication that such was the legislative intent. This general rule of statutory construction, which is supported by numerous cases, is founded upon the principle that statutory language should not be interpreted to apply to agencies of government, in the absence of a specific expression of legislative intent, where the result of such a construction would be to infringe sovereign governmental powers. (See *Butterworth* v. *Boyd,* 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838] ; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302, 305-308 [202 P. 37, 19 A.L.R. 452] ; *Bayshore Sanitary Dist.* v. *San Mateo, supra,* p. 339, and cases cited therein ; 23 Cal.Jur. 625 et seq.) Where, however, no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist

and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only. (See *State of California* v. *Marin Municipal Water Dist.*, 17 Cal.2d 699, 704 [111 P.2d 651].) For reasons set forth hereafter we think that the latter rule is the one which applies under the facts of the present case.

''The practical construction which this statute has received since its enactment in 1921, as is indicated by cases heretofore cited, has sanctioned the use of declaratory judgment procedure where political subdivisions of the state were involved. The practice thus established is entitled to consideration and should not be overturned unless clearly unsupportable. (Cf. *Golden Gate Bridge etc. Dist.* v. *Felt*, 214 Cal. 308 [5 P.2d 585] ; see (1942) 30 Cal.L.Rev. 682, 685.)

''It has been held repeatedly that actions for declaratory relief involve matters of practice and procedure only and are not intended in any way to enlarge the jurisdiction of courts over parties and subject-matter. (Cf. *Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227, 240 [57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000] ; *Nashville etc. Ry.* v. *Wallace*, 288 U.S. 249, 264 [53 S.Ct. 345, 77 L.Ed. 730] ; *Guaranty Trust Co. of New York* v. *Hannay* (1915) 2 K.B. 536, 563; see Anderson, Declaratory Judgments (1940), p. 206; Borchard, Declaratory Judgments (2d ed. 1941), p. 231. Such statutes are intended to provide an additional procedure for utilizing the existing jurisdiction of the courts. Similarly, it has been pointed out that this procedure is not intended to alter or modify the principles of sovereign immunity in any way. Declaratory judgment statutes do not authorize a determination of liability against the sovereign outside the terms of statutory provisions accepting liability and subjection to suit. (See Borchard, *op. cit. supra*, pp. 373-374.) Where governmental bodies are already subject to suit, however, it is clear that procedural statutes may be made applicable to such bodies without causing any interference with rights of sovereignty. (Cf. *Superior Oil Co.* v. *Superior Court*, 6 Cal.2d 113, 118 [56 P.2d 950].) If an acceptance of liability and subjection to suit on the part of a sovereign body is found elsewhere in the statutes of the state and the declaratory judgment procedure is not barred by the provisions of the waiver of immunity, we think it clear that a determination of the legal issue in an action for declaratory relief in no way constitutes an impairment of governmental sovereignty.''

 Declaratory relief and quiet title are procedural devices. If a person has entered into a contract with the state which results in the imposition of rights and duties on each side there is no reason why those rights and duties may not be enforced no matter what procedural device is selected. The contract between Mrs. Catching and the appellants which resulted in the mistaken deed determined the rights of the parties. The enforcement of the agreement to which the state became a party does not invade the sovereignty of the state—the state sought and then entered the contract. That is when it made itself potentially liable to suit arising therefrom. ''Where governmental bodies are already subject to suit, however, it is clear that procedural statutes may be made applicable to such bodies without causing any interference with rights of sovereignty.'' (*Hoyt* v. *Board of Civil Service Comrs., supra,* 21 Cal.2d 399, 403.)

 Declaratory relief is merely a procedural device and quiet title is basically a device for determining claims to real property. (See Code Civ. Proc., § 738.) Reformation is nothing but a remedy to correct a mistake in a written instrument, and a deed may be reformed. (*Holson* v. *Butler,* 63 Cal.App. 69 [218 P. 55] ; *Sutter Youth Organization, Inc.* v. *Borsen,* 214 Cal.App.2d 676 [29 Cal.Rptr. 628].)

Appellants rely on *State of California* v. *Royal Consolidated Mining Co.,* 187 Cal. 343 [202 P. 133], for the proposition that specific statutory authority must be found which gives a private person a right to sue the state in quiet title. In that case the State Controller filed an action to recover possession of real property for failure to pay delinquent taxes. The defendant raised the somewhat technical defense of challenging the validity of the tax deed because of certain alleged errors in the assessment of the property. The court treated the answer as, in effect, a cross-complaint and stated (at p. 347) : ''The general provisions of the law authorizing cross-complaints do not give the consent of the state to such cross-complaint in an action brought by the state.'' The court there does not speak in terms of sovereign immunity but only in terms of no ''consent'' by the state. Procedural consent to suit does exist here. (Wat. Code, § 8503.)

The Legislature in 1963 enacted section 814 of the Government Code. It thereby expressly reaffirmed the law of this state that public entities are not protected from liability arising out of contract by the doctrine of sovereign immunity. It reaffirmed clearly and unmistakably that a public entity or a

public employee may be liable in contract when it said: "Nothing in this part affects liability based on a contract or the right to obtain relief other than money or damages against a public entity or public employee."

Appellants further contend that if respondent's causes of action are not barred under the doctrine of sovereign immunity that they are barred by the statute of limitations.

Appellants' brief is lengthy and definitive of their position with regard to the bar of the statute, but to no avail. The trial court found on substantial evidence that there was a mistake made by appellants and respondent in the description in the deed, which caused an ambiguity and inaccurracy therein, which mistake was not discovered by respondent or its predecessor in interest until May 17, 1962, and that the failure to discover the mistake was not due to any lack of reasonable diligence on their part, that, as hereinbefore noted, appellants asserted no claim to or dominion over the property in question, and that respondent and its predecessor in interest were at all times in exclusive and uninterrupted possession. Further, in finding that respondent was not barred by any statute of limitations, or laches, it was entitled to declaratory relief to reform the deed and to have its title quieted.

No statute of limitations bars respondent, which brought the action against appellants based on mistake within three years of its discovery. (Code of Civ. Proc., § 338, subd. 4.)

"An outstanding adverse claim that amounts only to a cloud on the title is a continuing cause of action and is not barred by lapse of time until the hostile claim is asserted in some manner so as to jeopardize the superior title. So long as the adverse claim lies dormant and inactive, the owner of the superior title may not be incommoded by it, and has the privilege of allowing it to stand indefinitely." (31 Cal. Jur.2d 552.)

Under similar circumstances, where a plaintiff and his grantor had always remained in possession of real property and a defendant was never in possession, the court said: "The right of the plaintiffs to have their title to the land quieted, as against a claim asserted by the defendant under this deed, was not barred, and could not be, while the plaintiffs and their grantors remained in the actual possession of the land, claiming to be the owners thereof, and the actual owners, as against the defendant, of all interest therein ex-

cept the mere naked title." (*Smith* v. *Matthews,* 81 Cal. 120, 121 [22 P. 409]; *McNulty* v. *Copp,* 91 Cal.App.2d 484, 493 [205 P.2d 438].)

Appellants contend respondent and its predecessor in interest failed to exercise diligence in failing to discover the mistake in the deed and thus are barred under section 338, subdivision 4, of the Code of Civil Procedure. It is true the courts have read into this statute a duty to exercise diligence. It is said a plaintiff must prove facts showing lack of knowledge, lack of means of obtaining knowledge, and when the mistake was discovered. (1 Witkin, Cal. Procedure (1954) Actions, § 143, pp. 652-653.)

 However, the mere fact that respondent and his predecessor in interest knew of or read the written description would not bar reformation if the negligence was excusable. "The fact that the party seeking relief has read the instrument and knows its contents does not prevent a court from finding that it was executed under a mistake." (*Martinelli* v. *Gabriel,* 103 Cal.App.2d 818, 824 [230 P.2d 444]; *Mills* v. *Schulba,* 95 Cal.App.2d 559, 564-565 [213 P.2d 408].) Thus the trial court's finding of diligence is supported by substantial evidence and is binding here.

 Although not raised in appellants' brief it was suggested during the oral argument that since the sand on the excess acreage involved had been placed there with the consent of the owner as evidenced by the letter dated August 18, 1940, and since the placing of the sand was for a public benefit, a public use attached preventing its removal (*Sutro Heights Land Co.* v. *Merced Irr. Dist.,* 211 Cal. 670 [296 P. 1088]); and that the right perpetually to use the land for that purpose ripened into an easement after the prescriptive period of five years had elapsed.

The answer to this argument is that the only right ever acquired by the California Debris Commission was the right to deposit sand on the property on one occasion, i.e., to use the land on that occasion as a spoil deposit area as a part of a river channel deepening project. No permanent right to maintain the fill in place was ever intended or given. The findings of the court were: "Said fill materials were so deposited on her property during 1940 and thereupon all rights and authorization under said letter terminated. . . . Defendants have not maintained, nor otherwise exercised any dominion over, nor are they required to maintain the fill ma-

terials so deposited. . . .'' It is not contended that substantial evidence does not support that finding. The contention, therefore, cannot be sustained.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.