[Civ. No. 35346. Second Dist., Div. Five. Dec. 2, 1970.]

STATE OF CALIFORNIA ex rel.
DEPARTMENT OF EMPLOYMENT, Plaintiff and Respondent, v.
GENERAL INSURANCE COMPANY OF AMERICA,
Defendant and Appellant.

## COUNSEL

Monteleone & McCrory, G. Robert Hale and David P. Yaffe for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Neal J. Gobar and Mark W. Jordan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.**—This is an appeal from a judgment for plaintiff-respondent, State of California, in the sense of its Department of Employment (the Department), against defendant-appellant, General Insurance Company, a surety company (General); on its surety bond for unpaid unemployment insurance contributions due from a subcontractor on a public works contract and interest, penalties and attorney's fees.

Charles J. Dorfman (Dorfman) entered into a construction contract with the City of Los Angeles. Pursuant to the Contractor's Bond Act, Government Code, section 4200, et seq.,[1] Dorfman and General entered into contracts of surety whereby General agreed to pay, inter alia, unemployment insurance contributions if Dorfman or any of his subcontractors failed to pay the unemployment insurance contributions which were due. Dorfman subcontracted a portion of the work to be performed by Hydro-Tech Western Corporation (Hydro-Tech). Hydro-Tech furnished

---

[1]Sections 4200 to 4209 have been repealed and replaced by Civil Code sections 3247 to 3252, with sections 3085 and 3091 being related. The new legislation was enacted in 1969 to be effective January 1, 1971.

labor and materials until it ceased work on March 20, 1963. On April 30, 1963, Hydro-Tech filed a return with respondent regarding unemployment insurance contributions owed because of wages paid under this and other contracts, but did not pay such contributions. After Hydro-Tech ceased work, Dorfman withheld funds due to Hydro-Tech under their contract so that Dorfman could protect himself from unknown claims which might arise against Hydro-Tech. Certain claims were paid by Dorfman, and on July 8, 1963, pursuant to demand by it, the balance of the funds were paid to the Internal Revenue Service for Hydro-Tech's withholding and social security tax. On November 22, 1963, Dorfman first received notice and demand for payment from the Department of the claim against him for Hydro-Tech's unpaid contributions, interest and penalties. On January 17, 1964, General received notice and demand.

■ The sole issue here is whether the Department is barred from recovery by failure to serve the prime contractor with the 90 days written notice required by Government Code section 4209 as a condition precedent to suit against the surety on the prime contractor's bond.

Section 4209 provides in part: "In any case in which the law of this State requires that a contractor for construction of a public work file a payment bond, every person to whose benefit the bond inures who has not been paid in full, other than a person who performs actual labor for wages, and who has no direct contractual relationship with the contractor furnishing said bond shall have a right of action upon the bond only upon having given written notice to said contractor within 90 days from the date on which such person furnished the last of the labor or materials for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the labor or materials were furnished."

General contends that section 4209 is applicable to the Department because it is a "person to whose benefit the bond inures."[2] However, this phrase is modified by subsequent language requiring notice within 90 days from the date on which "such person furnished the last of the labor or

---

[2] The word "person" as used in a statute may include the state. (*Bing* v. *City of Duarte,* 65 Cal.2d 627, 631-632 [55 Cal.Rptr. 920, 422 P.2d 608].) The Government Code section 17 definition of person as "person, firm, association, organization, partnership, business trust, corporation or company" does not preclude application of section 4209 to the state in light of Government Code section 5, which provides that such definitions govern the construction of the code "[u]nless the provision or the context otherwise requires." (See *id.*)

materials for which such claim is made." The state does not furnish labor or materials; it collects unemployment insurance contributions from employers and holds them as part of a social scheme for the protection of the unemployed worker.

In *People* v. *Continental Casualty Co.* (1953) 118 Cal.App.2d 133 [257 P.2d 495], it was held that the state was not bound by a similarly worded statute. Government Code section 4206 provides: "Suit against the surety . . . on the contractor's bond may be brought by any claimant . . . at any time after the claimant has ceased to perform labor or furnish material . . . until the expiration of six months after the period in which verified claims may be filed. . . ." Holding that section 4206 did not bar the claim of the Department, the court reasoned that section 4206 merely created a limitation on an already existing right of action and that this limitation should not apply to the state. "In construing legislation generally with respect to whether or not the sovereign is bound thereby, it is well settled that to bind the government the statute must expressly declare that it does so or must so declare by necessary implication. . . . The only claimants to whom these provisions expressly refer are those who furnish labor and material. The state does not. The state is not expressly included in the statute. Nor is it included by necessary implication. Both the statutory pattern and measure of limitation fit those who furnished labor and material. Neither fits the situation of the state and the state can only be brought within the scope of the limitation by laboring the language thereof." (Pp. 134-135.)

General contends that the rule of statutory construction followed in *People* v. *Continental Casualty Co., supra,* has been substantially qualified by recent court decisions, and gives the following quotation from *Western Title Guar. Co.* v. *Sacramento & San Joaquin Drainage Dist.,* 235 Cal. App.2d 815, 821-822 [45 Cal.Rptr. 578], in turn quoting from *Hoyt* v. *Board of Civil Service Commrs.,* 21 Cal.2d 399, 402 [132 P.2d 804]: "This general rule of statutory construction which is supported by numerous cases, is founded upon the principle that statutory language should not be interpreted to apply to agencies of government, in the absence of a specific expression of legislative intent, where the result of such construction would be to infringe on sovereign governmental powers. [Citations.] Where, however, no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only."

This is not a recent formulation of the rule; note that it appeared in *Hoyt, supra,* in 1942, and that *Continental Casualty Co., supra,* was decided in 1953. Another statement of the rule is as follows: "A statute will not be construed to . . . limit the sovereign power of the state to . . . perform its governmental functions in behalf of the public . . ., unless such intent clearly appears. . . .

"Where a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government. In making that determination, it is proper to consider all matters which, under the rule[s] of statutory interpretation shed light on the legislative intention." (*People* v. *Centr-O-Mart,* 34 Cal.2d 702, 703-704 [214 P.2d 378], quoted in *Eden Memorial Park Assn.* v. *Superior Court,* 189 Cal.App.2d 421, 423-424 [11 Cal.Rptr. 189]; see also *Nutter* v. *City of Santa Monica,* 74 Cal.App.2d 292, 300-301 [168 P.2d 741]; 45 Cal.Jur.2d, Statutes, § 123, p. 632.) ■ Thus, in determining whether a statute is applicable to the state, the main consideration is legislative intent. If the statute would injuriously affect the capacity of the state to perform its functions, legislative intent to make it applicable to the state must appear clearly. Neither *Continental Casualty Co., supra,* nor the recent decisions cited by General (*Bing* v. *City of Duarte, supra,* 65 Cal.2d 627; *Western Title Guar. Co.* v. *Sacramento, supra,* 235 Cal. App.2d 815; *Eden Memorial Park Assn.* v. *Superior Court, supra*) are inconsistent with this principle.

■ The purpose of section 4209 is the protection of the prime contractor and his surety; the contractor can withhold payments from the delinquent subcontractor for 90 days, during which period he receives notice of claims. (*California Elec. Supply Co.* v. *United Pac. Life Ins. Co.,* 227 Cal.App.2d 138, 149-150 [38 Cal.Rptr. 479].) Since the contractor and surety would not be likely to know of the state's claims, the rationale behind section 4209 would seem to apply to such claims. However, whether the state should be required to give notice is a matter for the Legislature to decide, and we conclude, for the following stated reasons, that it is more consistent with the legislative intent to hold that section 4209 is not applicable to the state.

■ In construing a statute, it is first necessary to look at its "plain language." As stated above, the state does not come within the "plain language" of the statute because it does not furnish labor or materials. General's contention that it does rests on the theory that the state is a "person to whose benefit the bond inures" and that the statute should

be construed to require notice within 90 days after the furnishing of labor *with respect to which* the claim is made, inserting the emphasized words. General's reliance upon the phrase, "every person to whose benefit the bond inures," is a reliance on it in isolation from the balance of the language of section 4209. However, the interpretation of a statute must rest on all of the pertinent language and not merely an isolated phrase. Moreover, by judicially inserting the phrase "with respect to which" this court would be rewriting the statute. It is true that the purpose and intent behind a statute may prevail over literal construction. (*Silver* v. *Brown*, 63 Cal. 2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689]; *People* v. *City of Garden Grove*, 165 Cal.App.2d 794, 806 [332 P.2d 841].) However, to declare an interpretation seemingly at variance with the wording, we must have more evidence than we have that the legislative intent requires it.[3]

The legislative history of the Contractor's Bond Act supports our interpretation. Until 1947 the act protected only material suppliers and workers. In that year section 4204 was amended to require the contractor's bond to also cover amounts due under the Unemployment Insurance Code with respect to work performed on public projects. This inclusion indicates that the state was not considered a furnisher of labor or material and that a separate classification was necessary to include the unemployment insurance contributions within the bond.[4]

---

[3]As stated above, *People* v. *Continental Casualty Co.*, *supra*, 118 Cal.App.2d 133, held that similar language did not encompass the state.

A helpful analogy is to be found in the judicial interpretation of the Miller Act (40 U.S.C. § 270a et seq.), the federal counterpart of the state statutes in question. The interpretation placed upon federal statutes with language similar to that of state statutes is persuasive in construing the state statutes. (*Scripps etc. Hospital* v. *California Emp. Com.*, 24 Cal.2d 669, 677 [151 P.2d 109, 155 A.L.R. 360]; *California Elec. Supply Co.* v. *United Pac. Life Ins. Co.*, *supra*, 227 Cal.App.2d 138, 144.) The court in *Westover* v. *William Simpson Const. Co.*, 209 F.2d 908, 911, rejected the government's contention that federal unemployment taxes, as well as other taxes, were protected by a public works bond even though section 270a provided for a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." In 1966 section 270a was amended, giving federal taxes protection under a public works bond and specifically requiring that the government give notice. An inference can rationally be drawn from the inclusion of the latter provision that without it notice would not have been required.

[4]Section 4204 of the Government Code provides in part as follows: "To be approved, the contractor's bond shall provide that if the person or his subcontractors, fail to pay for any materials . . . used in . . . the performance of the work contracted to be done, or for any . . . labor thereon . . . or for amounts due under the Unemployment Insurance Code with respect to such work or labor, that the surety . . . will pay for the same. . . ."

The "with respect to such work or labor" language does not support General's contention that such a phrase should be read into section 4209. The point of including

In 1959 section 4209 was added. At that time the Legislature had full knowledge of the provision of section 4204 making the state a beneficiary of the bond with respect to unemployment insurance contributions. Yet the Legislature did not specifically name the state, or even use language applicable to it.

The Legislature is also presumed to have knowledge of *Continental Casualty Co., supra,* decided in 1953, construing section 4206. In 1957, section 4206 was amended with the pertinent language remaining intact. Then in 1959 section 4209 was enacted with similar language. ■ "It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment." (*Union Oil Associates* v. *Johnson,* 2 Cal.2d 727, 734 [43 P.2d 291, 98 A.L.R. 1499]; *Associated Boat Industries* v. *Marshall,* 104 Cal.App.2d 21, 23 [230 P.2d 379].)

■ General contends that the presumption should be inapplicable for several reasons which we list and answer:

The first is that the language of section 4209 is not identical with that of section 4206. Section 4209 provides that the claim be filed by one who "furnished . . . labor or materials"; section 4206 applied to claimants who "perform labor or furnish material." The essential characterization is the same. The similarity of language is substantial enough that a reasonable conclusion can be drawn that the Legislature, being aware of *Continental Casualty Co., supra,* enacted section 4209 with the intent that the Department was not to be governed by the section.

General's second reason is that section 4209 differs from section 4206 in that 4209 creates a cause of action. This is erroneous. The plaintiff in *Continental Casualty Co., supra,* could not have recovered if his cause of action was created by section 4209 which had not yet been enacted. The genesis of the cause of action in the abstract can be said to be sections 4200-4205, establishing the requirement for a bond and the terms thereof. The immediate cause of action as to any given claimant is provided by the bond itself.

■ General's third reason is that since certain claimants (beneficiaries who perform actual labor for wages and beneficiaries having a direct con-

that phrase in section 4204 was to limit the claim for unpaid unemployment insurance contributions to those which would be related to the labor actually performed on the project for which the bond was furnished.

tractual relationship with the prime contractor) are expressly excluded from section 4209, there should be no additional exclusion for the state. "[W]hen a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded." (*Collins* v. *City & County of S. F.,* 112 Cal. App.2d 719, 731 [247 P.2d 362].) This proposition is not applicable. We have determined that the language of the statute does not refer to the state, so it was not necessary for the Legislature to exclude the state from a class to which it did not belong. The beneficiaries expressly excluded are furnishers of labor and materials who would otherwise have been bound by the statute. As discussed above, the state is a special entity not to be bound by notice restrictions unless such a legislative intent clearly appears. For the latter reason, this decision applies only to the state. We do not consider the state to be an assignee of the laborer, and do not believe that it was intended to excuse assignees from the notice requirement.

It is true that section 4209 was enacted to assist the contractor in avoiding double liability, both paying the delinquent subcontractor and indemnifying the surety. However, our analysis indicates that it was not the legislative intent that this protection be used against the state.

Even when a contractor has agreed to indemnify, he can protect himself by requiring from the subcontractor an indemnifying bond for any loss sustained by the contractor because of any default by the subcontractors. (Gov. Code, § 4204.) Although this provision was added to section 4204 in 1961, apparently this right was recognized prior to the amendment. (*California Elec. Supply Co.* v. *United Pac. Life Ins. Co., supra,* 227 Cal.App.2d 138, 150, fn. 11.)

The Legislature would have been influenced by the hardship on the state of complying with section 4209. Perhaps it is not onerous or infeasible to require a 90-day notice period where a claimant is aware of the claim and its amount, and it is reasonable to assume that those who furnish labor or materials are so aware. However, the Department is in an entirely different position. It cannot know of the amount of its claim for unpaid insurance contributions until it has received a return from an employer giving such information, or, in the absence of such a return, it sends investigators to the office of an employer to examine his records. Unemployment insurance contributions and returns are not due until the end of the quarter. (Unemp. Ins. Code, § § 1088, 1110.) Each quarter lasts approximately 90 days. Contributions are not delinquent until 30 days after the quarter ends. (§ 1110.) If work were to cease on a public project within the first 30 days of the quarter, the 90 days provided by

section 4209 would elapse before the contribution became delinquent.[5] Moreover, a return might not be filed at all, and the Department would not know the amount of its claim until it conducted an audit.

Thus, the difficulty facing the state in complying with section 4209 is considerably greater than that facing material suppliers and workmen who have full knowledge of the amount of their claims without having to obtain the information from others.

The judgment is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied December 31, 1970, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1971.

---

[5]In 1965 section 1110 was amended to require that the portion of contributions taken from an employee's wages be reported and paid at more frequent intervals, and to shorten the delinquency period. Nevertheless, the Department must still wait for the return to be filed and the claim to become delinquent.