[L. A. No. 28037. In Bank. Jan. 30, 1967.]

ANNA H. BING, Plaintiff and Respondent, v. CITY OF DUARTE et al., Defendants and Appellants; JOHN ERRECA, as Director of Public Works, etc., et al., Defendants and Respondents.

William Camil, City Attorney, for Defendants and Appellants.

Harold W. Kennedy, County Counsel, Gordon W. Treharne, Deputy County Counsel, O'Melveny & Myers, Ray H. Lindman and Howard J. Deards as Amici Curiae on behalf of Defendants and Appellants.

John H. Klenke for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, Ernest P. Goodman and Dan Kaufmann, Assistant Attorneys General, Edward P. Hollingshead and Richard S. Cohen, Deputy Attorneys General, Harry S. Fenton, R. B. Pegram, Richard W. Bower, George W. Miley, Richard C. East and Charles E. Spencer, Jr., for Defendants and Respondents.

BURKE, J.—Defendants City of Duarte, its treasurer and five members of its city council (hereinafter collectively called the city), appeal from a judgment against them and in favor of plaintiff in an action to determine the validity and enforceability of 57 bonds issued by the city under the Improvement Act of 1911. (Sts. & Hy. Code, div. 7; § 5000 et seq.)[1] The

---

[1] Unless otherwise stated, all section references are to Streets and Highways Code sections as they read at the times here involved.

Director of Public Works and the Controller of the State of California (hereinafter together called the state) are also defendants. Plaintiff and the state are respondents on this appeal. ■ As hereinafter appears, we have concluded that the trial court erred in its conclusion that the 57 bonds are not valid and enforceable because issued against state-owned property, and that the judgment must accordingly be reversed.

The facts appear to be undisputed. In May 1959 the State Highway Commission adopted a freeway route through the city, which the city had theretofore endorsed and which was delineated in general but without exact measurements or legal descriptions, on a map sent to the city. In June 1960 the city duly adopted and thereafter published as required by law (see §§ 5131-5133, 5180-5182), a resolution of intention initiating Improvement District No. 7 for the construction of sanitary sewers to be paid for by assessments on the various parcels of land within such district. The district was predominantly a developed residential area through which the freeway route passed. The public street work of improvement and proceedings in connection therewith were carried out under the provisions of the 1911 Act.

On October 25, 1960, the city clerk of defendant city recorded in the office of the County Recorder of Los Angeles County a "Notice of Award of Contract in Proposed Assessment District," pursuant to the provisions of section 5248. Prior to October 17, 1961, the improvement work was fully completed by the contractor and approved and accepted by the city. The total cost of the improvement to the district was $406,936.42.

Meanwhile, between January 5, 1961, and October 4, 1961, the state had acquired title to 57 parcels of land within the improvement district, which it intended for use in connection with the planned freeway.

On October 14, 1961, the city adopted an assessment roll and diagram, and assessments, prepared under the provisions of the 1911 Act (see §§ 5360-5370) and including the 57 parcels owned by the state; and also directed that the warrant be issued by the street superintendent in accordance with the 1911 Act. (§ 5371.)

On October 17, 1961, the assessment roll and diagram and the warrant were recorded in the office of the County

Recorder of Los Angeles County. (§ 5372.) On the same date a warrant was issued by the city empowering plaintiff, as assignee of the contractor, to demand and receive the several assessments. (§ 5374.)

On November 17, 1961, the city issued, among others, 57 of its 1911 Act improvement bonds to plaintiff. (See §§ 6420-6422.) The 57 bonds purported to constitute liens against the 57 parcels of land owned by the state. (§ 6446.) Plaintiff filed claims with the state and the city for payment of the principal and interest due on the 57 bonds; the claims were denied. Both the state and the city have refused to pay or to make any provision to pay the bonds, each contending that the other is liable therefor. The state asserts that the city was without authority to assess the 57 parcels acquired by the state prior to October 17, 1961, the date upon which the assessment lien attached, and that consequently the lien on the 57 parcels is void.

Subsequent to October 17, 1961, the state acquired additional parcels of land within the improvement district against which there were also outstanding and unpaid bonds. The state raises no question as to its liability to discharge the obligation of such bonds.

Of the 57 parcels of state-owned property involved in the disputed assessments, two were large undeveloped tracts and 55 were developed with single-family residences. As of the time of trial six residences had been removed and some 45 of the remaining residences were occupied.

The state and the city had not, at the time of trial (May 1963) entered into the customary freeway agreement under Streets and Highways Code section 100.2, governing street closures, separation structures and freeway connections. Actual commencement of construction of the freeway was scheduled for five to six years from the date of trial.

The trial court rendered judgment decreeing in pertinent part that the 57 bonds here in issue are invalid and unenforceable and do not constitute a valid lien upon the 57 parcels of property acquired by the state before October 17, 1961, and against which they had been levied; that the property in the district acquired by the state after October 17, 1961, for highway purposes is subject to the assessment; that neither the city nor the state is liable for payment of the 57 disputed bonds. The court ordered that the city reassess the property in the district excluding the 57 parcels owned by the state prior to October 17, 1961; that the reassessment include

the amount of the 57 disputed bonds ($37,792.42) with interest to the date of recording of the reassessment; that after the reassessment ''new, additional or different bonds to be issued to plaintiff [as] may be necessary or required, all in accordance with the provisions of Streets and Highways Code sections 5500 to 5511, inclusive.''

The city contends, *inter alia,* that the recording of the notice of award of the contract, as provided in section 5248,[2] resulted in the 57 parcels of property against which the 57 disputed bonds were issued becoming subject to the assessments thereafter placed on such property by the city. In our view, this position is sound.

Section 5248 twice declares that recordation of the notice of award of contract setting forth, among other things, a description of the territory included in the assessment district, shall constitute *notice to all persons* that *all property within the boundaries of* the *proposed district* shall be *assessed* in proportion to the benefits which the property receives from the improvement, *notwithstanding* the *acquisition of any of the property by the state* or by the other public entities named in the section.

Despite the plain language of section 5248 declaring that *all* property described in the recorded notice of an award of contract shall bear its share of the assessment notwithstanding its later acquisition by the state, etc., the state,

---

[2]Section 5248: ''Notice of the award of the contract shall be published by the clerk.

''The clerk may, upon payment of the statutory fee prescribed therefor, record a notice of the award of contract in the office of the county recorder. Said recordation shall constitute notice to all persons that all property within the *boundaries of* the *proposed* assessment *district shall be assessed* at the time of the confirmation of the assessment under Chapter 16 (commencing at Section 5360) of Part 3 of this division to pay the costs of the improvement in proportion to the benefits which the property receives from the improvement, *notwithstanding* the *acquisition of the property by the State* or any of its agencies, or by any county, city, municipality or other public or municipal corporation. Said notice shall be substantially as follows: . . .

''[The notice includes a description of the territory included in the assessment district.]

''This shall constitute notice to all persons that *all property within* the *boundaries of the proposed* assessment *district shall be assessed at the* time of the confirmation of the assessment under Chapter 16 (commencing at Section 5360) of Part 3 of this division to pay the costs of the improvement in proportion to the benefits which said property receives from the improvement, *notwithstanding* the *acquisition of any such property by the State* or any of its agencies, or by any county, city, municipality or other public or municipal corporation.'' (Italics added.) (Stats. 1959, ch. 905, p. 2941, § 1.)

citing sections 19[3] and 700, subdivision (a), pleads that it is not a "person" within the terms of the section and that the recorded notice therefore provided no notice to the state. However, section 19 is modified by the declaration of section 5 that the definitions included in the Streets and Highways Code, including that of section 19, apply "Unless the particular provision or the context otherwise requires. . . ." And section 700 is a section which enlarges the definition of "person" for the specialized questions of utilities in freeways. The statement in *Berton* v. *All Persons* (1917) 176 Cal. 610, 617 [170 P. 151], that "A sovereign state is not a person," was made in the course of holding that (p. 617) "A reading of the McEnerney Act[4] discloses not only a failure by the state to declare itself bound by decrees so obtained, but makes manifest that the statute was dealing only with the private rights of private persons." (See also *Kearney Investment Co.* v. *Golden Gate F. Co.* (1926) 198 Cal. 560, 563 [246 P. 322].) A reading of the statute at issue in the case now before us discloses on the contrary an intent that the state be bound. ■ And as observed in *Hoyt* v. *Board of Civil Service Comrs.* (1942) 21 Cal.2d 399, 404-405 [132 P.2d 804], "The United States Supreme Court said in a recent case, commenting upon the suggestion that the word 'person' could never include a governmental body, '. . . "there is no hard and fast rule of exclusion. The purpose, subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by use of the term, to bring state or nation within the scope of the law." ' [Citations.]"

Moreover, the state does not appear to deny that it had *actual* notice that the 57 lots it acquired fell within the boundaries of the proposed assessment district. Rather, it suggests that the purpose of the Legislature in amending section 5248 to provide for *recordation* of the notice of award of contract was to give formal, constructive *notice* to "all persons" that the proposed assessments to be levied against all private property within the district would be increased if any of the private property was acquired by a public agency after the original notice of intention but prior to confirmation

---

[3]Section 19: " 'Person' means any person, firm, partnership, association, corporation, organization or business trust."

[4]Drafted to restore records of title destroyed by public disaster, as in the San Francisco earthquake and fire, and to quiet title of the plaintiff after such restoration. (Pp. 615-616 of 176 Cal.)

of the assessment and recordation thereof pursuant to section 5372; that such formal, constructive *notice* was necessary to overcome the effect of this court's decision in *People* v. *Peninsula Title Guar. Co.* (1956) 47 Cal.2d 29 [301 P.2d 1]. The state's argument on the point is ingenious but unconvincing. In the first place, when provision for recording the notice of award of contract was first added to section 5248 in 1957 (Stats. 1957, ch. 523, p. 1565, § 1) the year following *Peninsula Title,* the language with which we are here concerned read as follows: "From the time of the recording . . . *all property* within the boundaries of the proposed assessment district *shall be assessed . . . notwithstanding* the subsequent *acquisition* of any such property *by a public agency.*" (Italics added.) ▊ The further provision that the recording "shall constitute notice to all persons" was not added until 1959 (Stats. 1959, ch. 905, p. 2941, § 1), and nothing therein appears intended to weaken the positive declaration that recording of the notice of award fixes the date as of which all property in the district shall be subject to its beneficial share of the assessment despite its acquisition by one of the public agencies listed by the 1959 amendment. (See *ante,* p. 631, fn. 2.)

Moreover, the *Peninsula Title* case dealt with the Municipal Improvement Act of 1913 (Sts. & Hy. Code, div. 12, § 10000 et seq.), and *not* the 1911 Act with which we are here concerned. The question there presented was whether private property owners should be required to pay out of a condemnation award the amount of an assessment levied and recorded under the 1913 Act after the state had taken possession of the property and commenced construction of a highway overpass thereon but before the condemnation award had been made. The assessment proceedings had been initiated some 15 months before summons issued in the eminent domain proceeding and some 17 months before the state had taken possession. In holding that the property owners were entitled to the full condemnation award without deduction on account of the assessment lien which attached after possession of the property had been taken from them, note is made in the opinion of the fact that under Code of Civil Procedure section 1249 the value of the property was fixed as of the date of issuance of summons (p. 31 of 47 Cal.2d), as of which date and the later taking of possession by the state *the benefit of the improvement had not yet accrued* to the property. (P. 32.)

This was true because under the 1913 Act the award of the contract and the work of improvement take place *after* the assessment lien attaches upon recordation of the assessment. (See §§ 10402.5, formerly 10402; 10428; 10500-10510.)

Under the 1911 Act, however, the contract award and the improvement work occur *before* recordation of the assessment and attachment of the assessment lien. (See §§ 5360-5372.) Thus the state's theorizing that in amending section 5248 of the *1911* Act in 1957 the Legislature was attempting to avoid the effect of *Peninsula Title,* which dealt with the *1913* Act, utterly lacks in persuasion. ■ [See fn. 5] Instead, it is more logical, and consistent with the actual provisions of section 5248, to conclude that the section was amended to deal with the situation presented in the instant case, and that its intent is that property acquired by one of the named public entities after recordation of the notice of award of contract shall be subject to assessment on the same basis as is other property in the district, rather than to give notice that property which may later be acquired by a public entity will be exempt from the assessment.[5]

This conclusion is fortified if it is conjectured that the state might have acquired a full one-half of the property in the

---

[5]As the state points out, the 1913 Act (§ 10000 et seq.) does incorporate certain of the provisions of the 1911 Act. Thus section 10102 authorizes acquisition or installation of any or all of the works and improvements mentioned in the 1911 Act. Section 10103 makes applicable the 1911 Act provisions for work and assessments ''by a city within a county or by a county within a city.'' Section 10108 permits formation of a maintenance district pursuant to certain specified provisions of the 1911 Act. Section 10205 incorporates by reference the provisions of the 1911 Act relating to contributions to the improvement work, by a public agency accepting it as a project.

Section 10206 states that ''The provisions of the [1911 Act] relating to assessments on publicly owned property . . . are incorporated in this division as if fully set out herein.'' However, section 10206 has not been amended since codification of the 1913 Act in 1953 (Stats. 1953, ch. 192, p. 1180, § 4), and obviously applies only to the provisions of sections 5301-5303 (hereinafter discussed in this opinion) of the 1911 Act, and not to the provisions of section 5248. Sections 5301-5303 have at all times since 1953 provided for the omission, *at the time of the resolution of intention,* of certain publicly owned land from the assessment thereafter to be made—provisions which logically may be applied under either the 1911 or the 1913 Act. But as already noted, the provision for recording the notice of award of contract under the 1911 Act, and that from the time of the recording all property within the proposed district shall be assessed upon the later confirmation of the assessment despite acquisition of any of such property by a public agency, did not appear in section 5248 until 1957. Since under the 1913 Act the contract is awarded only *after* the assessment is confirmed and recorded, the section 5248 provisions dealing with contract awards made *before* confirmation and recordation of the assessment plainly cannot apply to proceedings under the 1913 Act.

district, following recordation of the notice of award of contract. Or three-quarters of it, or perhaps 90 percent. If contractors and bond purchasers are faced with the prospect that possible acquisition of land by the state for future freeways, after such recordation and even after the work of improvement has started or has been substantially completed, could remove from the assessment burden a substantial portion of the area within the proposed improvement district, leaving them to look for payment solely to whatever privately owned land may remain, where could contractors be found who would be willing to gamble against such a contingency and how could local agencies ever successfully construct and finance improvements under the 1911 Act? It appears that such a situation might also completely wipe out the remaining property owners in the district if the burden of the entire assessment were to be thrown upon them. We are convinced that no such result was intended by the Legislature.

Nothing in our holding that the parcels of state-owned property are subject to the assessment for which the 57 disputed bonds were issued, conflicts with the views expressed in *Inglewood* v. *County of Los Angeles* (1929) 207 Cal. 697 [280 P. 360]. The attempted assessments there involved were by districts created under acts devoid of provisions comparable to the "notwithstanding" clause of section 5248. Also, that case expressly recognizes that publicly owned property may be liable for special assessments for public improvements in case there is positive legislative authority therefor, either expressly or impliedly provided by statute. (Pp. 707-708 of 207 Cal.) Section 5248 confers such authority under the circumstances now before us.

Further support for this view is found in the provisions of sections 5301-5303.[6] Those sections in pertinent part (1)

---

[6]Section 5301: "If any lot or parcel of land belonging to the United States, or to the State, or to any county, city [etc.] *is* in *use in the performance of any public function,* and is included within the district to be assessed . . ., the legislative body *may,* in the resolution of intention, *declare* that such lots or parcels of land, or any of them, shall be *omitted* from the assessment. . . ." (Italics added.)

Section 5302: "If any such lots or parcels of land are omitted from the assessment, the total expense of all work done shall be assessed on the remaining lots or parcels of land lying within the . . . district, without regard to such omitted lots or parcels of land."

Section 5302.5: "If the legislative body, in the resolution of intention, declares that any lot or parcel of land owned and used as provided in Section 5301 shall be included in the assessment, or if no declaration is made respecting [it] then any assessment upon [it], *except any lot or parcel owned* by the United States . . . or *by the State of California or*

permit (§ 5301) the legislative body in its *resolution of intention* to omit from the assessment any land lying within the proposed district which then belongs to certain public entities, including the state, and which then *"is in use in the performance* of any public function''; (2) direct (§ 5302) that *if* any such land is so omitted then the remaining land in the district shall bear the entire expense of the improvement; (3) specify (§ 5302.5), that if the resolution of intention includes the publicly owned and used land in the assessment or fails to mention the subject, then such land, except that owned by the United States or by the state or any department thereof, shall bear its share of the assessment; and (4) declare (§ 5303) that if the resolution of intention includes such land owned by the United States or by the state or fails to mention it, then the *city shall be liable* for the assessment against such land, payable out of the city's general fund unless the resolution of intention designates another fund.

 Thus, although sections 5301-5303 do not apply in this case because the 57 lots acquired by the state after October 25, 1960, obviously were neither state-owned nor ''in use in the performance of any public function'' at the time (June 13, 1960) the legislative body adopted its resolution of intention —which is the step at which section 5301 permits it to omit from the assessment publicly owned and used land which is included in the district—nevertheless the express and detailed provisions of those sections authorizing omission from the assessment of such land at that early step in the proceedings and the absence of authority for later removing it, indicates the intent of the Legislature that publicly owned land may be so omitted *only* by provision made in, and at the time of adoption of, the resolution of intention. The state's suggestion that on each occasion that it acquired a parcel of property following adoption of the resolution of intention, the city should have amended the resolution and excluded the state-owned property from the boundaries of the district is

---

any department thereof, shall be an enforceable obligation against the owner of such property. . . .'' (Italics added.)

Section 5303: ''If the legislative body, in the resolution of intention, declares that any lot or parcel of land used as provided in Section 5301 and owned by the United States . . . or the State of California . . . shall be included in the assessment, or if no declaration is made respecting [it], then the city shall be liable for such sum as may thereafter be assessed against such lot or parcel of land and which is unpaid after 30 days from the recordation of the assessment. Such sum shall be payable by the city out of the general fund unless the legislative body shall in its resolution of intention designate another fund.''

equally lacking in merit. The state acquired none of its property until after the award of contract, and the exclusion of such property would therefore have required the consent, not here given, of the contractor or the bidder to whom the contract was awarded. (§ 5231.)[7] It follows that sections 5301-5303 provide no support for the state's contention that its acquisition of the 57 parcels for future freeway purposes served to omit or remove those parcels from the assessment here involved. This conclusion renders it unnecessary to reach the state's further contention that from the date it acquires property for future highways such property is "in use in the performance of a public function" within the meaning of sections 5301-5303. However, as already noted, 55 out of the 57 parcels here involved were developed with single-family residences, of which 45 were occupied at the time of trial and six had been removed. Additionally, the County of Los Angeles as amicus curiae points out that at least one of its own assessment proceedings involves an assessment on parcels which have been sold by the state as being excess. In order to avoid repetitious litigation on the issue of exactly when property acquired by a public agency has been put "to use in the performance of any public function" within the meaning of sections 5301-5303, the matter is commended to the attention of the Legislature.

▇▇ The state notes that the 1911 Act contains no provisions for enforcement of assessments against publicly-owned property, and contends that such an omission lends support to the state's position that the Legislature did not intend to subject such lands to assessment. However, the city appears correct in stating that a money judgment against the state will suffice, and is permissible. (See *Southlands Co.* v. *City of San Diego* (1931) 211 Cal. 646, 668-669 [21] [297 P. 521]; *City of Pasadena* v. *McAllaster* (1928) 204 Cal. 267, 274 [2] [267 P. 873].)

In view of the conclusion that the 57 disputed bonds constitute valid liens against the 57 parcels of state-owned property, other contentions of the parties need not be discussed.

---

[7] The city also appears correct in asserting that the amendatory procedure suggested by the state would be a practical impossibility. Under section 5232 a public hearing preceded by a published 10-day notice is called for each time the city attempts to amend the resolution of intention. During that time the state could continue to acquire property, thereby requiring the city to start a new amendatory proceeding. The result would be that the state could delay indefinitely the completion of the assessment district proceedings.

The judgment is reversed for further proceedings consistent with the views expressed herein.

Plaintiff and the city are to recover their costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Sullivan, J., and Roth, J. pro tem.,* concurred.

Respondents' petitions for a rehearing were denied February 28, 1967, and the judgment was modified to read as printed above. Roth, J. pro tem.,* sat in place of Mosk, J., who deemed himself disqualified.

*Assigned by the Chairman of the Judicial Council.