[Civ. No. 46928. Second Dist., Div. Four. June 22, 1976.]

COUNTY OF SANTA BARBARA, Plaintiff and Respondent, v. CITY OF SANTA BARBARA, et al., Defendants and Appellants.

**COUNSEL**

Wilson, Jones, Morton & Lynch and Robert G. Auwbrey for Defendants and Appellants.

George P. Kading, County Counsel, and Don H. Vickers, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.**—This is an appeal from a judgment which declared that certain assessments and charges levied by the City of Santa Barbara against the County of Santa Barbara and property owned by it are invalid and which directed the issuance of a peremptory writ of mandate commanding the defendant city to set aside such assessments and charges.

In 1961 the City of Santa Barbara adopted Ordinance 2826 which established a procedure for the formation of off-street parking districts. Section 16 of the ordinance provided that bonds issued under the ordinance and the interest thereof "shall be payable from annual ad valorem assessments levied on the taxable real property within the district."

After the adoption of Ordinance 2826, the City of Santa Barbara proceeded to form two parking districts which later were consolidated into one district. The County of Santa Barbara owns various property

within the parking district, but was not then assessed since the property was not "taxable real property."

In 1968 the City of Santa Barbara adopted Ordinance 3282 which established reassessment procedures applicable in districts formed under Ordinance 2826. Section 1 of the ordinance specifies grounds for reassessment.

In 1973, the City of Santa Barbara adopted Ordinance 3576 which amended section 16 of Ordinance 2826 to provide that bonds and interest thereon shall be payable "from annual assessments levied upon all real property within the district which is subject to special assessment for benefits from local improvements under the State and Federal Constitutions, including, without limiting the generality of the foregoing, real property belonging to any county, city, public agent, mandatory of the government, school board, educational, penal or reform institutions or institutions for the feeble minded or the insane, whether or not in use in the performance of any public function, but excepting privately owned tax exempt property. . . ."

Ordinance 3576 also added section 16B to Ordinance 2826 to authorize the imposition of "charges against property owners of the parking district including owners of publicly owned property."

The city then went through proceedings to reassess the property in the district, and added publicly owned property as subject to assessment. The announced basis for reassessment was that public interest requires the reassessment proceedings. Charges were imposed by the city in the amount of the assessment.

The trial court found that assessment and charges against the County of Santa Barbara were invalid and unenforceable. Although respondent county proposed a number of grounds the trial court found that the city lacked authority to assess county public use property unless permitted to do so by state law, and since that finding resolved the case the court did not rule on the other contentions raised by the briefs.

The issue before this court is whether the assessments and charges are valid.

## I.

■ Appellant city's first argument is that public use, and not public ownership, governs assessability. The rule is that where publicly owned property is devoted to a public use, it is impliedly exempt from assessment. (*City of Fresno* v. *Fresno Irrigation Dist.* (1925) 72 Cal.App. 503, 507 [237 P. 772]; *City Street Imp. Co.* v. *Regents, etc.* (1908) 153 Cal. 776 [96 P. 801].) Such publicly owned, publicly used property is exempt from assessment unless "there is positive legislative authority therefor." (*Inglewood* v. *County of Los Angeles* (1929) 207 Cal. 697, 702, 704 [280 P. 360].)

## II.

Appellant next argues that the original reason for disallowing assessment of publicly used property no longer exists. The city argues that enforcement of assessments against publicly used property originally meant foreclosure of an assessment lien against property used for public purposes, which interfered with the assessed property's ability to perform its public function. (*Witter* v. *Mission School District* (1898) 121 Cal. 350, 351, 352 [53 P. 905].) But appellant argues that such reasoning is no longer applicable today because it is not necessary that the ability to foreclose exist in order to enforce the collection of the assessment levy. Appellant argues that a money judgment against the entity is sufficient[1] to enforce collection.

Therefore, appellant concludes, since the reason for the original rule no longer exists, this appellate court should now hold that publicly owned, publicly used property is not exempt from special assessment. The city's argument is superficially persuasive. However, foreclosure against a public entity is not the only way in which a public entity's function can be injuriously affected by an assessment. If a county is forced to pay assessments on publicly used property there will inevitably be a loss of funds available to county institutions and a resulting diminution of county services, or also an increased tax burden on the citizens.

The rule in this state is that public property, when actually devoted to public use, is exempt from special assessments. (*City Street Imp. Co.* v.

---

[1]In *Bing* v. *City of Duarte* (1966) 65 Cal.2d 627, 637 [55 Cal.Rptr. 920, 422 P.2d 608], the court stated that "the City appears correct in stating that a money judgment against the state will suffice, and is permissible."

*Regents, etc.* (1908) 153 Cal. 776 [96 P. 801].) ■ If, as a matter of public policy, the county should properly bear its share of benefits for special assessments even though that county property is devoted to public use, that decision is not a matter that can be decided by a court.

## III.

Appellant argues that the city has power to assess publicly used property, on the grounds that levying assessments for improvements is a "municipal affairs" power of a chartered city. Appellant argues that the city has adopted the fundamental municipal affairs power provided by the state Constitution (§ 400 of the city's charter), and power to assess public use property emanates therefrom.

The city correctly points out that the creation of a parking district is a municipal affair (*City of Redwood City* v. *Moore* (1965) 231 Cal.App.2d 563, 577 [42 Cal.Rptr. 72][2]) and parking places benefit property and justify a levy of a special assessment. (*Alexander* v. *Mitchell* (1953) 119 Cal.App.2d 816 [260 P.2d 261].) The city argues that, since in a charter city the levying of assessments for improvements is a municipal affair, the city council of a charter city is "the law making power as regards such exercise of the taxing power," and "the right to make exemptions is involved in the right to select subjects of taxation." (*San Francisco* v. *McGovern* (1915) 28 Cal.App. 491, 512 [152 P. 980].) Appellant concludes from the above cases that the charter city's fundamental municipal affairs and taxing power give the city the power to control the implied exemption of public use property by either allowing it to stand or removing it.

Appellant's arguments are not well taken. ■ Although it has been held that a local body, such as a city, when exercising an interest in improvements which it deems will jointly benefit publicly owned and used property and private property, may include and assess in its discretion the property of the public entity (Sts. & Hy. Code, §§ 5301, 5302.5; *City of Saratoga* v. *Huff* (1972) 24 Cal.App.3d 978 [101 Cal.Rptr. 32, 102 Cal.Rptr. 376]), the concept of allowing the assessing body to make such assessments is limited to situations where the Legislature expressly so provides. (*Inglewood* v. *County of Los Angeles* (1929) 207 Cal. 697, 707 [280 P. 360].)

---

[2]Questioned in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 at page 63 [81 Cal.Rptr. 465, 460 P.2d 137] on another point.

■ Allowing the assessing body discretion in the matter of assessing state used property has been provided for specifically by statute (Improvement Act of 1911 (see Sts. & Hy. Code, §§ 5301 and 5302.5, Municipal Improvement Act of 1913)). The city herein does not contend that it has assessed county property in accordance with the 1911 Improvement Act, and thus that act does not apply here. If the city had made its assessment on the basis of the 1911 act, our holding would be otherwise. Therefore, without legislation allowing the city to assess publicly owned, publicly used property, the city may not make the assessment.

Secondly, the assessment of county public use property for such local improvements as a parking district is not simply a municipal affair. ■ Although assessments of parking districts are usually a municipal affair, general law prevails over local matters of a chartered city, even in regard to matters which would otherwise be deemed to be strictly municipal affairs, when the subject matter of the general law is of statewide concern. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 292 [32 Cal.Rptr. 830, 384 P.2d 158].)[3] Since counties are political subdivisions of the state and perform many functions which are state functions (*County of Los Angeles* v. *Riley* (1936) 6 Cal.2d 625, 627 [59 P.2d 139, 106 A.L.R. 903]; *County of Marin* v. *Superior Court* (1960) 53 Cal.2d 633, 638, 639 [2 Cal.Rptr. 758, 349 P.2d 526]), it follows that operation and maintenance of county public use property are state functions which cities cannot properly regulate. A city cannot interfere with, or hamper, the county in the performance of those functions which are state functions, as distinct from purely local functions. Under certain circumstances, an act relating to property within a city may be of such general concern that local regulations concerning municipal affairs are inapplicable. (*County of Los Angeles* v. *City of Los Angeles* (1963) 212 Cal.App.2d 160, 166, 167 [28 Cal.Rptr. 32].)[4] In the event of conflicting legislation, general state laws control. (*Bishop* v. *San Jose*, 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137].)[5]

---

[3]City argues that this case does not relate to assessment. Although that is true, the principle of law applies to the case at bar.

[4]This case held that a city cannot apply building and zoning ordinances to county buildings.

[5]Other cases have also prohibited the city from interfering with state functions. (*City of Orange* v. *Valenti* (1974) 37 Cal.App.3d 240 [112 Cal.Rptr. 379] (city's attempt to specify number of parking spaces needed by state held invalid); *Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574] (school district not subject to city building regulations); *Simpson* v. *Hite* (1950) 36 Cal.2d 125 [222 P.2d 225] (selection of a site for municipal and superior court not subject to an initiative); *Vagim* v. *Board of Supervisors* (1964) 230

Assessment of public use county property is of such general concern that local regulation of municipal affairs is inapplicable, because the city may not hamper the county in performing its functions.

Appellant claims that out-of-state cases hold that a home rule charter city may assess county public use property, and that this court should be bound by those cases. Cases from other jurisdictions, turning as they do, on the constitutions, statutes and precedents of those states are of little help in determining our own problems in this field. We regard them as unpersuasive and need not consider them in this opinion.

IV.

The appellant contends that, by amendment of Ordinance 2826 (the assessment procedure ordinance), the city is exercising powers to assess public use property set forth in the Improvement Act of 1911. The city contends that the adoption of the 1911 act is authorized pursuant to the city's charter provisions 400, 401 and 1501. These sections read as follows:

"Section 400. POWERS OF CITY. The City shall have the power to make and enforce all laws and regulations in respect to municipal affairs, subject only to such restrictions and limitations as may be provided in this Charter or in the Constitution of the State of California. *It shall also have the power to exercise any and all rights, privileges and powers, including proprietary powers, heretofore or hereafter established, granted or prescribed by any law of the State,* by this Charter, or by other lawful authority, or which a municipal corporation might or could exercise under the Constitution of the State of California, subject to such restrictions and limitations as may be contained in this Charter.

"The enumeration in this Charter of any particular power shall not be held to be exclusive of, or any limitation upon, the generality of the foregoing provisions." (Italics added.)

"Section 401. PROCEDURES. *The City shall have the power to and may* act pursuant to any procedure established by *any law of the State,* unless a different procedure is required by this Charter." (Italics added.)

Section 1501, paragraph (2) provides:

---

Cal.App.2d 286, 290 [40 Cal.Rptr. 760] (case concerned county's function in constructing and maintaining building).)

"(a) 'Shall' is mandatory, and *'may' is permissive.*" (Italics added.)

Appellant also argues that the provisions of a charter are the law of the state and have the force and effect of legislative enactments. (Const., art. XI, § 3.) Appellant argues that a charter is the law of the state (*Ex parte Sparks* (1898) 120 Cal. 395, 399 [52 P. 715]), and under the charter, the city has adopted the 1911 Improvement Act.

The city elaborates its "adoption of powers" theory as follows:

The city explains that the Legislature has conferred upon the city by virtue of its charter the right to exercise certain powers which the city could not exercise under its municipal affairs power. The city reasons that, even if the assessment of county property is not a "municipal affair," the city by the terms of the charter has the power to adopt powers granted to cities by general laws and the city has (by Ordinance 3576) adopted the Improvement Act of 1911. The city relies on the language of sections 400 and 401 of the city charter to support its contentions that it can exercise all powers granted cities under general laws.

The city then argues that article XI, section 3 of the Constitution provides that the provisions of a charter "are the law of the State and have the force and effect of legislative enactments."

The city thus construes all these above provisions in the charter and Constitution to expand the powers of the city beyond the powers granted to general law cities.

A preliminary analysis of the language in charter sections 400 and 401 appears to support the city's interpretations of its expanded powers. Furthermore, the language of section 3 of article XI of the state Constitution states that the provisions of a charter are the laws of the state and they have the force and effect of legislative enactments. (*Taylor v. Cole* (1927) 201 Cal. 327, 332 [257 P. 40]; *Ex Parte Sparks, supra,* 120 Cal. 395, 399.) Thus, we would have the "positive legislative authority" to assess public use property. (*Inglewood* v. *County of Los Angeles, supra,* 207 Cal. 697, 707.)

Nevertheless, the city's interpretation of sections 400 and 401 cannot stand. Section 5 of article XI of the state Constitution reads as follows: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regula-

tions in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in *respect to other matters they shall be subject to general laws. . . .*" (Italics added.)

Thus, under the state Constitution in matters which are not municipal affairs a chartered city is subject to general laws. It follows that a city is subject to general laws under the Constitution, and is not free to either adopt, or not adopt those laws, in its discretion.

Case law also supports this view. City charter provisions cannot control in matters of statewide concern when the state has occupied the field. For example, the exercise of the power of eminent domain is a matter of statewide concern, not a municipal affair, which cannot be abrogated by a municipality. (*Wilson* v. *Beville* (1957) 47 Cal.2d 852, 859 [306 P.2d 789].) It has been held that "The approval of a municipal charter by the state Legislature confers the power of home rule upon the municipality, but this power is limited to municipal affairs. In non-municipal matters the general law controls." (*Wilkes* v. *City etc. of San Francisco* (1941) 44 Cal.App.2d 393, 395 [112 P.2d 759].) ■ Also, "[A] city, by adopting a charter, becomes independent of general laws only as to 'municipal affairs', and . . . in matters of general statewide concern the general law is paramount." (*Eastlick* v. *City of Los Angeles* (1947) 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225].)

As we have said above, the assessment of county public use property is a nonmunicipal matter where the general law controls. The city has no choice in adopting a state law. General law controls and city's adoption is irrelevant in matters of statewide interest.

■ The city argues that its charter gives direct authorization from the Legislature to adopt "any law of the state," and that the city has therefore adopted the 1911 act. The city asserts that the Legislature can confer powers on a charter city "in addition to those enjoyed by virtue of its status as a charter city." (*City of Redondo Beach* v. *Taxpayers, Property Owners, etc., City of Redondo Beach* (1960) 54 Cal.2d 126, 137 [5 Cal.Rptr. 10, 352 P.2d 170].) The city's reliance on *City of Redondo Beach* v. *Taxpayers* is not well taken. That case held that taxes and bond issues for municipal purposes are clearly municipal affairs within the "municipal affairs" doctrines. Therefore, *Redondo Beach* is not authority for city's position.

Although case law recognizes the power of a charter city to adopt powers provided in state laws (*City of San Jose* v. *Lynch* (1935) 4 Cal.2d 760 [52 P.2d 919]; *Alpha Beta Acme Markets, Inc.* v. *City of Whittier* (1968) 262 Cal.App.2d 16 [68 Cal.Rptr. 327]), these cases do not hold that cities are not bound by general law in nonmunicipal affairs matters, where there is already general law dealing with the subject.

As stated earlier, the city does not contend that it has assessed county property in accordance with the 1911 Improvement Act. The assessment of county property used for public purposes is a matter of statewide concern and the city does not have the power to make such assessments; unless it does so in accordance with the procedure established by the state law. The city did not follow state procedure, but chose its own procedure. Although the chartered city may be granted powers beyond municipal affairs, in matters of statewide concern their powers are limited as follows:

Although the Legislature in approving a charter can delegate to the city the authority to do things beyond what it can do as an exercise of municipal affairs, the authority to do so must be "expressly delegated to it by the legislature either through its charter or some general law." (*Whyte* v. *City of Sacramento* (1924) 65 Cal.App. 534, 546 [224 P. 1008].) There are limits on conferring extra municipal affairs powers on a charter city. ▮▮▮ Powers vested in a city by a freeholder's charter, to regulate affairs not municipal in character, are not absolute, but are subject to and controlled by general laws and are granted on condition that they yield to and be suspended by a general law inconsistent therewith. (*Civic Center Assn.* v. *Railroad Comm.* (1917) 175 Cal. 441, 452 [166 P. 351].) A freeholder's charter does not supersede any general law which affects and applies matters involving the welfare of the people of the state as a whole. (*Whyte* v. *City of Sacramento, supra,* 65 Cal.App. 534.) In the event of conflict or intended preemptive state legislation, the city is subject to general laws. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137].)

▮▮▮ In the case before this court the assessing of county used property involves the welfare of the state as a whole, and the city charter does not supersede general law.

The city's argument that there is no conflict between general law and the extra-municipal affairs grant of power is not well taken. The city argues that the grant of powers restricts the city to exercising only powers

contained in the state law, and therefore there can be no conflict. The state alone can legislate in these matters. The fact that there is a general law in a matter of statewide concern shows a state preemption of the field, and the city lacks the power to choose to adopt matters of statewide concern.

Public use property is only liable for special assessment where there is positive legislative authority therefor; statements which apply generally to property within the district are not regarded as positive legislative authority. A state and its subordinate agencies are not bound by general words used in a statute. (*Inglewood* v. *County of Los Angeles, supra* (1929) 207 Cal. at p. 707.) Here we lack positive legislative authority to assess county property.

## V.

The city argues that powers can be severed and utilized apart from procedures contained in the statute. It is correct that the city may adopt different procedures and sections within acts. (*City of San Jose* v. *Lynch, supra,* 4 Cal.2d 760, 763, 765.)  ■  However, a city cannot select part of a general law which is only part of a general scheme and reject the rest of that scheme.  ■  The 1911 Improvement Act allows a city to assess public property only in connection with the kind of district therein covered and only after following the elaborate procedure for formation of a district and for levying assessments therein provided. The ordinances now before us make no attempt to follow any part of the 1911 act except the single portion allowing assessment of public property. That legislative permission is so intimately tied to the whole of the 1911 act that this limited use of a single portion is not within the legislative permission.

## VI.

County argues that the charges imposed by the city against the county are also invalid. Section 2 of Ordinance 3576 adds section 16B to Ordinance 2826 in an attempt to authorize the city to prescribe charges payable on a uniform and equitable basis by the owners of the property to which the facilities of the district are available including the owners of publicly owned property. We agree with the county's claim that the so-called charges are really assessments under a different name. The city may not do indirectly what it cannot do directly. (See, *John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372, 385 [103 Cal.Rptr. 215].)

## VII.

■ Respondent county argues that grounds for reassessment do not exist under the language of the city's own ordinance. Ordinance 3282, section 1, reads:

"Reassessment proceedings *shall* be conducted in any of the following events:

".  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) Upon the initiative of the Council, if the Council is of the opinion that all or any of said matters or any part thereof are void, invalid or unenforceable, or that the validity thereof is questionable or that the questioning of the validity thereof is threatened, or that the public interest will be served by such reassessment proceedings." (Italics added.)

We agree with the city's interpretation of subdivision (c) of section 1 of Ordinance 3282 that the city is authorized to order reassessment proceedings whenever the "public interest" will be served thereby.

The county contends that the language related to the "public interest" modifies the other grounds in subdivision (c), so that there are only grounds for reassessment where there are one of the other grounds *and* also the city council finds the "public interest" will be served. The county argues that unless the other grounds in subdivision (c) are interpreted to be in the conjunctive with the "public interest" ground, the balance of section 1 is meaningless surplusage, since a reassessment for any of the grounds specifically enumerated would ultimately also serve the public interest. We do not agree. Serving the "public interest" is a broader ground than the other grounds in subdivision (c) and is not a redundant ground. Although it is true that the words "or" and "and" are often used improperly in legislation and sometimes they are interpreted interchangeably, we see nothing in the context of the language of the particular ordinance before this court that suggests to us that the framers of the ordinance used "or" when they in fact meant "and." Serving "the public interest" is a legitimate ground in itself under the ordinance, and is a sufficient ordinance ground for reassessment.

## VIII.

The county argues that the assessment of county property on reassessment after exemption in the original proceedings deprived it of equal protection of laws. The county argues that it was treated unequally because it had no right of protest in the assessment proceedings.

We need not determine the novel contention that a county—a subdivision of the state—is protected by some "equal protection" provision against action authorized by the state. In the case at bench, the county was given an opportunity to protest in the reassessment proceeding. That reassessment proceeding was a new and independent proceeding, leaving the original assessment moot. (*Cowart* v. *Union Paving Co.* (1932) 216 Cal. 375, 379 [14 P.2d 764, 83 A.L.R. 1185].) It follows that, even assuming that the county is entitled to some kind of "equal protection," it cannot now claim unequal treatment because of not having been a part of the original assessment proceeding.

## IX.

County argues that the method set forth for establishing the value of county property is invalid. Ordinance 3576 provides that "If an ad valorem basis is used, and the assessed value of any parcel does not appear on the tax roll, an estimated assessed value of such parcel shall be made by the Director of Public Works in consultation with the County Assessor, and such estimate shall for purposes of such ad valorem assessment be considered the assessed value of such parcel." County points out that the city uses an ad valorem basis for assessment and the assessed value of county property does not appear on the county assessment roll.

County notes that city Ordinance 3598 requires that the county assessor provide in writing an estimate of all publicly owned properties within the assessment district, and if the assessor does not provide such estimate, the director of public works is to estimate the assessed value of such publicly owned property (§ 13.05.050 Santa Barbara Mun. Code). The estimates are then to be presented to the city council for amendment or confirmation (see § 13.05.100 et seq., Santa Barbara Mun. Code, Ordinance 3598)

County argues that the assessment of county property and other publicly owned tax exempt property differs substantially from the

assessment of other properties. County asserts that a procedure whereby certain assessments are based on value established by the county assessor or the county tax appeals board and other assessments are based on values established by the city public works director or the city council almost inevitably will result in unequal treatment of various properties. Since the county assessor declined to respond to a request for his evaluation of county property, and since the county assessor is subject to supervision by the county board of supervisors (Gov. Code, § 25303), the county attorney is in no position to complain that it was being treated unfairly. The county board of supervisors could have ordered the county assessor to assess county property.

## X.

■ County argues that the exemption of privately owned tax exempt property and state property also denies the county equal protection of the laws. ■ The equal protection clause applies to tax matters, and distinction between classes drawn by a tax statute must rest on some ground of difference having a fair and substantial relation to this object of the legislation. (*Royster Guano Co.* v. *Virginia* (1919) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560].) ■ We cannot say that the exemption from assessment of private property is an arbitrary classification. Such exemption encourages the owner of private property to use it for a public purpose, and therefore the exemption classification is in the public interest.[6]

County argues that taxes are different from assessments, and rules of law relating to taxation do not apply. ■ It is true that assessments are different from taxes, in that assessments are for benefits conferred and taxes are for the general public good. (*San Diego* v. *Linda Vista I. Dist.* (1895) 108 Cal. 189 [41 P. 291]; *City Street Imp. Co.* v. *Regents, etc., supra,* 153 Cal. 776.) ■ However, there is still no reason why private property should not be exempted from assessments, even though that property has received a benefit; as we have said, such exemption acts as an incentive to the owners to continue conferring a public benefit. It has been held that exemption of private property from taxation does not extend to special assessments, levied on the basis of equivalent benefit, *"unless specifically* so provided." (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 747-748 [221 P.2d 31, 15 A.L.R.2d 1045]; italics added.) Here it was specifically so provided.

---

[6]The constitutional exemption from taxation does not apply to special assessment.

## XI.

██ Appellants argue that the county has waived its right to assert the grounds on which it seeks relief because its written protest did not enumerate all the grounds of its objection. The written protest specifically states "Protest is also made to the jurisdiction of the City of Santa Barbara to conduct these reassessment proceedings and to levy taxes, assessments or charges against the County of Santa Barbara on its property as purported to be authorized by Ordinance No. 3576 of the City of Santa Barbara." That was a sufficient statement to raise the issues in its protest. The county's protest need not enumerate all the grounds to be relied on in a brief. There was no waiver.

## XII.

██ Respondent argues that the constitutional tax exemption contained in section 3 of article XIII of the state Constitution applies to exempt the county. County argues that the designation of "tax" or "assessment" in the statute is not controlling. (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 747 [221 P.2d 31, 15 A.L.R.2d 1045].) The fact that an ad valorem assessment is involved does not make it a tax and does not make it subject to constitutional tax exemption provision. (*Cedars of Lebanon Hosp.* v. *County of L.A., supra*, 35 Cal.2d 729, 747-748.) ██ The character of a levy as a tax or an assessment depends on whether it is exacted in compensation for a benefit to the property upon which it is made a charge, and its classification is not affected by the method adopted for collection. (*Cedars of Lebanon Hosp.* v. *County of L.A., supra*.) ██ Here the levy is clearly for a benefit conferred, and the levy was an assessment.

The judgment is affirmed.

Jefferson (Bernard), J., concurred.

**FILES, P. J.,** Concurring.—I concur in the judgment. When this district was created and the indebtedness incurred no provision was made for assessing county property to support the district. Subsequently enacted ordinances and the Improvement Act of 1911 are not relevant.

Appellants' petition for a hearing by the Supreme Court was denied September 15, 1976.