[Civ. No. 19666. Fourth Dist., Div. Two. Aug. 11, 1978.]

COUNTY OF RIVERSIDE, Plaintiff and Respondent, v.
IDYLLWILD COUNTY WATER DISTRICT,
Defendant and Appellant.

656

COUNSEL

Redwine & Sherrill and Joseph S. Aklufi for Defendant and Appellant.

Ray T. Sullivan, Jr., County Counsel, and Timothy J. Davis, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

TAMURA, J.—This case involves a controversy between the County of Riverside and the Idyllwild County Water District (district) over a charge imposed by the district in connection with the county's use of the district sewerage facilities. In a declaratory relief action brought by the county, the court granted the county's motion for summary judgment and entered a judgment decreeing that the county was not obligated to pay the charge in question. The district appeals from the judgment.

The county's motion for summary judgment was submitted on a written stipulation of facts which included the following:

In 1968, the district sold general obligation bonds of its Improvement District No. 1 which had been previously authorized by the voters and used the proceeds to construct sewerage facilities. A bond retirement and redemption fund was established to service the bonded indebtedness.

In 1971, the board of directors of the district adopted resolution No. 128 requiring "all tax exempt entities" to pay, as a condition of sewer service, a "Capital Cost Sewer Capacity Charge" (hereafter capital cost charge) as an "equitable contribution toward the capital cost of the sewerage system." The resolution fixed the amount of the charge and required its payment either bimonthly along with the regular sewer service charge, or, at the option of the tax exempt entity, in a lump sum, "which lump sum shall represent the present worth of the total capital cost sewer capacity charge based upon an interest rate of five per cent (5%) over a period of 40 years." The resolution further provided: "Each tax exempt entity shall, prior to receiving sewer service, enter into an agreement with the District which shall generally described [*sic*] the property to receive sewer service, the total number of fixture units, the

number of fixture units to be connected initially, the amount of the capital cost sewer capacity charge, the method of payment, and any other appropriate matters."[1] The revenue from the capital cost charge is deposited in the district's bond retirement and redemption fund.

In April 1974, the assistant county park planner wrote to the district's manager informing him that the park department was about to submit to the board of supervisors a request for authorization to make an application to connect the county's Idyllwild park to the district's sewer service. The letter inquired whether the district's resolution No. 128 was still "valid" and whether any agreement had been reached between the district and the county counsel concerning the validity of the capital cost charge. The district's manager responded that resolution No. 128 was still valid and that although no agreement had been reached between the district's legal representative and the county counsel concerning the validity of the capital cost charge, the district was still of the view that the county, like all other tax exempt agencies, must pay the charge.

In May 1974, the county counsel reported to the board of supervisors concerning the park department's proposed application to the district. He advised the board that the capital cost charge imposed by the district's resolution No. 128 as applied to the county was improper and illegal and recommended that the park department's proposed application "be referred to this office for handling, with the view of persuading the County Water District not to levy this particular charge and if this is not successful, for appropriate legal action, including the commencement of legal proceedings in a court of competent jurisdiction." The board of supervisors adopted a resolution authorizing the park department to make an application to the district for sewer service, but ordered that the capital cost charge be paid only if recommended by the county counsel and that the matter be referred to the county counsel for "handling, to seek elimination of the charge, by negotiation with the District."

Thereafter (May 1974), the county park department executed and filed with the district an application for sewer service for the county's Idyllwild

---

[1]Resolution No. 128 was amended in June 1975 to change the method of computing the capital cost charge.

Park.[2] The county has connected to the district's sewerage system and has paid all charges for such connection and service except the $57.50 monthly capital cost charge imposed pursuant to the district's resolution No. 128.

On the foregoing stipulated facts, the county contended that the capital cost charge was invalid and that it was precluded from paying it. The district, as expected, contended otherwise. The trial court agreed with the county and entered judgment decreeing that the county "is neither constitutionally, statutorily, nor contractually obligated to pay the capital cost sewer capacity charge levied upon it by [district]."

The district contends that the issue is not whether it may validly assess the capital cost charge against the county, but simply whether the county may validly agree to pay the charge. The two issues, however, are interwoven; whether the county can agree to pay the charge depends upon whether the district has the power to impose it.

The rule in California is, with exceptions not here pertinent, that property owned by a county is exempt from property taxation. (Cal. Const., art. XIII, § 3, subd. (b).) Similarly, unless the Legislature expressly so authorizes, property publicly owned and used is exempt from

---

[2] The application was in the following form:

"CONNECTION PERMIT APPLICATION FOR SERVICE

"Name   Idyllwild Park   Acct. No.   B-9550

"Mailing address   P. O. Box 341, Idyllwild, Ca. 92349

"Property location   54000 Playground Road

"Legal description   Sec. 12 & 15 & 5S R2E

"Type of connection:   Residential_____   Commercial  X

  "Description   Public Park

  "Units of Service   15   at   $4.00                                            $   60.00

  "Additional charges   None

  "Service charges per month                                                         57.50

  "Connection fee                                                              $   100.00

  "Total charges                                                               $_____

"The undersigned customer requests the Idyllwild County Water District improvement District 1, to make a sewer connection and supply sewer service at the above described premises, and agrees to observe any District regulations now or hereafter adopted to the sewer service and to pay bills promptly.

  "Signed   Peter Dangermond "

special assessments. (*Inglewood v. County of Los Angeles*, 207 Cal. 697, 707 [280 P. 360]; *County of Santa Barbara v. City of Santa Barbara*, 59 Cal.App.3d 364, 369, 376 [130 Cal.Rptr. 615].) The imposition of a capital cost charge on tax exempt entities was a means of making such entities contribute a proportionate share of the cost of constructing the district's sewerage facilities. The charges are in effect a special assessment under a different name and constitute an attempt by the district to do indirectly that which it could not do directly. (See *County of Santa Barbara v. City of Santa Barbara, supra,* 59 Cal.App.3d 364, 376.)

The Attorney General was presented with a question similar to the one at issue in 19 Ops.Cal.Atty.Gen. 195. In responding to an inquiry whether a sanitary district could fix and collect a charge from a school district for the use of sewerage facilities, the Attorney General ruled that by virtue of the tax exempt status of school property, the sanitary district was not empowered to impose and collect from the school district a special charge not exacted from other users. (*Id.,* at p. 197.) He concluded, however, that the school district could be required to pay sewer service charges based upon a rate schedule applicable to all users. (*Id.,* at p. 198.)

We agree with the views expressed by the Attorney General in the above opinion. We hold that the district was not empowered to impose the capital cost charges against the county. However, this does not mean that the county will be getting a free ride. The record discloses that the county has been paying the standby connection fee and bimonthly users fee in accordance with the district's rate schedule applicable to all users of its facilities and that it will continue to do so.

The district urges that the county was empowered to enter into an agreement to pay the capital cost charges and had done so. The argument is premised on the theory that the county and the district could have entered into a joint-powers agreement to construct the sewerage facilities and to share the cost thereof. The flaw in the argument is that the alleged agreement on which the district relies is not a joint-powers agreement for the construction of sewerage facilities; it is a user's agreement to pay charges. For the county to agree to pay an invalid charge would amount to a gift of public funds in contravention of article XVI, section 6 of the California Constitution.

■    The district's argument that the county is estopped from denying the validity of the agreement to pay the capital cost charge is without merit. The record does not contain any evidence which would support the invocation of estoppel or waiver against the county. The resolution of the board of supervisors authorizing the park department to apply for sewer services specifically provided that the capital cost charges were to be paid only if approved by the county counsel. The stipulated facts further reveal that there had been extended negotiations and discussions between the district's legal representative and the county counsel concerning the validity of the charge and that the disagreement had never been resolved. Thus, there was no evidence of estoppel on the part of the county to assert the invalidity of the capital cost charge. Similarly, there is nothing in the record to support a waiver of the county's right to refuse to pay the charge.

The judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.