[Civ. No. 67835. Second Dist., Div. Four. Oct. 11, 1983.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Plaintiff, Cross-defendant and Respondent, v.
CITY OF LOS ANGELES, Defendant, Cross-complainant and Appellant.

## COUNSEL

Ira Reiner, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and John F. Haggerty, Assistant City Attorney, for Defendant, Cross-complainant and Appellant.

Donald L. Reidhaar, George L. Marchand, Allen B. Wagner and Christine Helwick for Plaintiff, Cross-defendant and Respondent.

## OPINION

**WOODS, P. J.—** The issue presented is whether as a matter of law the City of Los Angeles (city) can impose a sewer service charge on the Regents of the University of California (Regents) when the charge is used to finance capital improvements to the local sewer system. We conclude that they may not.

The Los Angeles Municipal Code section 64.102 was amended effective 1980 so as to increase the city's sewer service charge.[1] The amendment also earmarked a portion of the charge for the financing of capital improvements to the local sewer system. In pertinent part, the new ordinance reads:

---

[1] The ordinance was in response to federal pressure to eliminate the discharge of sewage sludge into the Pacific Ocean by July 1, 1985. A consent decree between the city, the State of California, and various federal and state agencies provides that the city's failure to stop the discharge of sludge into the Pacific Ocean by the target date will result in a penalty of $10,000 per day of violation. A plant is under construction in the San Fernando Valley which will relieve the burden in the Hyperion plant where the sewage from UCLA is processed. City claims that if the valley plant were not being constructed, a decrease in sewage would be necessary from the areas utilizing Hyperion, including UCLA. We refrain from speculation as to how such a decrease in sewage would be accomplished.

"(1) For the payment of costs of operation and maintenance (including replacement) for the sewer system, the rates shall be:

"For residential users ................................................. 6.9 cents

"For commercial, industrial and governmental users ........... 10.6 cents

"(2) . . . For the financing of capital improvements to sewer system, the rates shall be:

"Residential Users .................................................... 16.4 cents

"Commercial, Industrial and Governmental Users............. 26.2 cents"

The part of the charge to be used for capital improvements was paid by the Regents under protest. In September 1981, the Regents filed a declaratory relief action and an injunction for reimbursement of monies paid. They stopped paying the charge. The city cross-complained, seeking a declaration that the Regents are required to pay the charges. The city also asked for unpaid charges.

The Regents' motion for summary adjudication was granted. The basis for the judgment was an earlier case between the parties, *Regents of University of California* v. *City of Los Angeles* (1979) 100 Cal.App.3d 547 [160 Cal.Rptr. 925]. It had been stipulated that in this action the amount paid by the Regents to the city was $296,642.21, and the city was ordered to pay that amount. It is from this judgment that the city appeals.

I

In *Regents of University of California* v. *City of Los Angeles, supra,* 100 Cal.App.3d 547, the city imposed a "sewerage facilities charge" to fund public sewer construction. The Regents paid under protest and asked for declaratory relief and a refund. The Court of Appeal held:

■ "A special assessment is generally defined as a charge imposed on property owners within a limited area to help pay the cost of a local improvement designed to enhance the value of the property within that area. (*Northwestern etc. Co.* v. *St. Bd. Equal.* (1946) 73 Cal.App.2d 548, 552 [166 P.2d 917]; *County of San Bernardino* v. *Flournoy* (1975) 45 Cal.App.3d 48, 52 [117 Cal.Rptr. 732].) ■ Because state and local government property is specifically exempt from property taxation (Cal. Const., art. XIII, § 3), such property is also exempt from special assess-

ments.[2] (*Inglewood* v. *County of Los Angeles* (1929) 207 Cal. 697, 703-704 [280 P. 360]; *County of Riverside* v. *Idyllwild County Water Dist.*, (1978) 84 Cal.App.3d 655, 659-660 [148 Cal.Rptr. 650]; *County of Santa Barbara* v. *City of Santa Barbara* (1976) 59 Cal.App.3d 364, 369-370 [130 Cal.Rptr. 615].)

"At bench, although the amount of the 'sewage facilities charge' is based upon anticipated use of the sewer system by the user, the collected revenues are not used to defray the costs of providing sewer service to the users. Such costs are funded through the 'sewer connection charge' and the 'monthly sewer service charge,' charges whose payments the Regents do not dispute. Rather, the revenues collected as a result of the 'sewage facilities charge' are used by the city to provide capital for sewer construction, i.e. to finance local improvements. Such a charge for capital funding is little more than a disguised special assessment. (*County of Riverside* v. *Idyllwild County Water Dist.*, *supra*, 84 Cal.App.3d at pp. 659-660.) City argues, and the court below agreed, that the Regents should be required to pay their fair share of the capital costs of local improvements whose benefits they enjoy. The people of the city, the argument goes, should not be required to bear the full burden of improvements whose benefits inure to the people of the state as a whole, as is the case with a state university. This argument, perhaps a good one, is directed in the wrong quarter, for this court has no authority to modify the tax-exempt status of publicly owned property. Unless some constitutional modification of article XIII is adopted, the 'sewer facilities charge' remains as merely one more special assessment masquerading under a different name and one more attempt by a local taxing entity to accomplish indirectly what it cannot do directly. Although the Regents may benefit from an improved and expanded sewer system, by reason of their exemption from property taxation they cannot be required to contribute to its capital costs. (*County of Santa Barbara* v. *City of Santa Barbara* (1976) 59 Cal.App.3d 364, 370 [130 Cal.Rptr. 615]; *County of Riverside* v. *Idyllwild County Water Dist.*, *supra*, 84 Cal.App.3d at pp. 659-660.)" (*Regents of University of California* v. *City of Los Angeles, supra,* 100 Cal.App.3d at pp. 549-550.)

---

[2]We do not read the cases cited by Regents to hold that state property is constitutionally exempt from payment of special assessments. *Inglewood* v. *County of Los Angeles* (1929) 207 Cal. 697, 703 [280 P. 360], holds that there is an implied exception of public property from special assessments. *County of Riverside* v. *Idyllwild County Water Dist.* (1978) 84 Cal.App.3d 655, 659-660 [148 Cal.Rptr. 650], holds that "unless the Legislature expressly so authorizes, property publicly owned and used is exempt from special assessments." *County of Santa Barbara* v. *City of Santa Barbara* (1976) 59 Cal.App.3d 364, 369 [130 Cal.Rptr. 615], simply states the "rule in this state is that public property, when actually devoted to public use, is exempt from special assessments."

Whether the exemption is based on the Constitution or public policy, in this case the result is the same.

We uphold the decision of the court below that *Regents* controls the case before us.

## II

The city contends that the sewer service charge is not equivalent to a special assessment. The city argues that the sewerage facilities charge prohibited in *Regents* differs from the sewer service charge here because the former was based on an anticipated use (*Regents of the University of California* v. *City of Los Angeles, supra,* 100 Cal.App.3d at p. 548), while the latter is based on actual use, and that a charge based upon actual use is not an assessment. We find this argument unpersuasive. The *Regents* test is the *purpose* of the disputed charge. (*Regents of the University of California* v. *City of Los Angeles, supra,* at p. 549.)

Nor does the method of calculating the charge define its nature. Whether the charge is a one time occurrence or a monthly assessment is irrelevant to the purpose for which the collection is made. The character of the assessment is also not affected by the fact that the sewer service charge is unrelated to property value. (*Regents of the University of California* v. *City of Los Angeles, supra,* 100 Cal.App.3d at pp. 549-550.)

The city attempts to distinguish a case cited in *Regents* from the case before us. In *County of Riverside* v. *Idyllwild County Water Dist., supra,* 84 Cal.App.3d 655, the sewer charge for capital construction was imposed only upon tax exempt entities. In the case at bench, the sewer service charge was imposed on all users. In *Regents,* the charge was also imposed on all users. That case makes city's attempted distinction ineffective.

Similarly, the Attorney General's opinion, 19 Ops.Cal.Atty.Gen. 195 (1952), and *Board of Ed.* v. *Greater Peoria San. & Sewage* (1980) 80 Ill.App.3d 1101 [400 N.E.2d 654], are inapposite. Both deal with a true sewer service charge, i.e., a fee for the use of sewage facilities, not for capital construction of those facilities.

The city's bankruptcy case, *In re Lorber Industries of California, Inc.* (9th Cir. 1982) 675 F.2d 1062, is unavailing. In that case, the local sewer district tried to get sewer use fees assessed to *Lorber* after the company filed bankruptcy. The sewer district claimed that the fees were entitled to priority status because they were taxes. The Ninth Circuit denied the claim. Defining "tax" under federal law, the court said: "In general [user fees] can be classified as a tax only if they constitute 'a pecuniary burden laid upon individuals or property for the purpose of supporting the Government'

or to support 'some special purpose authorized by it.' [Citation.] . . . .
Taxes are levied without the consent or voluntary action of the taxpayer."
(*Id.*, at p. 1066.) This does not relate to the issue before us. We need not,
and do not, discuss the voluntariness of the use of a sewer system.

## III

The city argues that imposition of a sewer service charge is a valid ex-
ercise of its police power rather than an exercise of its taxing power. It
relies for this proposition on certain language in *Longridge Estates* v. *City
of Los Angeles* (1960) 183 Cal.App.2d 533, 539 [6 Cal.Rptr. 900]: "*Con-
struction,* maintenance, and repair of sewers and storm drains may be pro-
vided by ordinance and sustained as a valid exercise of police power in the
interest of public health and as an incident to constructing and maintaining
streets. (Cal. Const., art. XI, § 11 [now § 7].) [Citations.] [¶] . . . . [¶]
The power to make a reasonable charge for the connection to and use of the
sewers was a proper incident to the exercise of police power by defendant
to provide them. [Citation.]" (Italics added.)

In *Longridge Estates,* two developers were required to pay an outlet sewer
charge before final approval of their tract maps. They sued to recover the
monies paid. The case is not pertinent to the issues before us. In *Longridge
Estates,* the city was regulating private development by insuring that ade-
quate sewage facilities existed for the planned subdivisions. We find no such
regulation in a sewer charge for capital improvements. Even if the sewer
charge were a regulatory ordinance, *Regents* tells us that the state when
conducting its sovereign activity is free from all such regulation.

## IV

Appellant's last contention is that the capital improvements which neces-
sitated the increase are of benefit to the Regents. An entire sewer system
must be maintained in size and strength to accommodate the potential max-
imum use of all facilities permitted. This issue has already been determined:
"Although the Regents may benefit from an improved and expanded sewer
system, by reason of their exemption from property taxation they cannot be
required to contribute to its capital costs. [Citations.]" (*Regents of Univer-
sity of California* v. *City of Los Angeles, supra,* 100 Cal.App.3d at p. 550.)

The summary judgment is affirmed.

McClosky, J., and Lucas, J.,* concurred.

A petition for a rehearing was denied November 1, 1983, and appellant's petition for a hearing by the Supreme Court was denied December 14, 1983.

*Assigned by the Chairperson of the Judicial Council.