[No. G000285. Fourth Dist., Div. Three. Feb. 8, 1985.]

ANAHEIM CITY SCHOOL DISTRICT et al.,
Plaintiffs and Appellants, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

COUNSEL

Buchalter, Nemer, Fields, Chrystie & Younger, Leonard D. Brinley and Jack I. Samet for Plaintiffs and Appellants.

Adrian Kuyper, County Counsel, and Benjamin P. de Mayo, Deputy County Counsel, for Defendants and Respondents.

OPINION

SONENSHINE, J.—Appellants, comprising the majority of the school districts in Orange County, appeal the denial of their petition for writ of mandate commanding the County of Orange to accept, at its disposal sites, solid waste from appellants without charge.

Until 1982 operating costs for county solid waste disposal sites and transfer stations were funded through the county general fund. When this source

became inadequate to subsidize the increased volume at the facilities,[1] the Orange County Board of Supervisors by resolution imposed a schedule of gate fees at all landfills and transfer stations based on tonnage accepted. The original resolution was passed in July 1982 and became effective in October. In February 1983 appellants filed their petition for writ of mandate, alleging the county and board had "a clear, present, and ministerial duty to provide an official service to Petitioners at no charge pursuant to Government Code Section 6103 by accepting waste for disposal at [the county's] waste disposal sites and transfer stations."[2] The writ was denied in March.

I

█ Appellants contend the county and board have no authority to impose the gate fees. However, we find ample statutory grounds for their action.

First, in 1972 the Solid Waste Management and Resource Recovery Act was enacted, requiring a master plan from each county identifying the present and future solid waste facilities. (Gov. Code, § 66700 et seq.)[3] Any county or other government agency may elect to provide any aspect of solid waste handling services *itself,* "including, but not limited to, collection, transfer, and *disposal* of solid waste . . . ." (§ 66756, italics added.) That agency may then determine "[a]spects of solid waste handling which are of local concern including . . . charges and fees, . . ." (§ 66757.) Further "[a]uthorization for [the county's] fees is . . . found in chapter 2 of the act, dealing directly with solid waste management plans. It provides: '[S]tate policy . . . shall not include aspects of solid waste handling *or disposal* which are solely of local concern . . . such as . . . *charges and fees . . . .*'" (*Garden Grove Sanitary Dist.* v. *County of Orange, supra,* 162 Cal.App.3d 842, 849.)

Second, section 25823 directly authorizes the board to "make and enforce all necessary and proper regulations for the use of disposal facilities not in conflict with the Constitution and the laws of the State. The board may collect compensation from private or public parties for the right to dump or for the use of any dump site, incinerator, or other disposal plant, or for the disposal of garbage or rubbish brought to any dump site, incinerator or other disposal plant . . . ." Appellants argue section 25823, authorizing "compensation" rather than "fees," is inconsistent with section 25830. The latter

---

[1]*Garden Grove Sanitary Dist.* v. *County of Orange* (1984) 162 Cal.App.3d 842, 846 [208 Cal.Rptr. 777].

[2]Points I and II below were not alleged in the writ. They were, however, discussed at the hearing.

[3]All statutory references are to the Government Code unless otherwise specified.

section provides a schedule of fees *may* be imposed on land within the unincorporated area of the county to finance collection, processing and disposal *services, if* those services are provided to the residents of the unincorporated areas.

Thus appellants insist, in the interests of harmony between the sections, section 25823 can only be construed to mean the county may "enter into agreements for the joint use of dump sites with other entities also authorized to operate dump sites." The allegation is, of course, ludicrous—the county is the only entity presently operating dump sites. The statutes are straightforward. Pursuant to section 25823 the county may collect compensation from private *or public* parties for the *use* of its disposal facilities.[4] On the other hand, section 25830 provides a mechanism by which the county *may* establish a fee schedule for the unincorporated areas (not within existing garbage disposal districts) *if* the county provides waste collection and concomitant disposal *services* to those residents. There is no inconsistency. The county has chosen to collect compensation for the *use* of its disposal sites and transfer plants. "The board may permit the use of any dump site, incinerator, or other disposal plant, by lease *or otherwise,* by municipalities *or other government agencies.*" (§ 25821; italics added.)

## II

██ Appellants next assert they are exempt from the fees because the charges are a disguised special assessment. ██ "A special assessment is generally defined as a charge imposed on property owners within a limited area to help pay the cost of a local improvement designed to enhance the value of the property within that area. [Citations.] ██ Because state and local government property is specifically exempt from property taxation (Cal. Const., art. XIII, § 3), such property is also exempt from special assessments." (*Regents of University of California* v. *City of Los Angeles* (1979) 100 Cal.App.3d 547, 549 [160 Cal.Rptr. 925].) Appellants' premise is correct; their conclusion is not.

In *County of Riverside* v. *Idyllwild County Water Dist.* (1978) 84 Cal.App.3d 655 [148 Cal.Rptr. 650], the county objected to payment of a "Capital Cost Sewer Capacity Charge." It *did,* however, remit without argument the regular sewer service charge. The court held "the district was not empowered to impose the capital cost charges against the county. However, this does not mean that the county will be getting a free ride. The

---

[4] In the ordinary sense of the word, "compensation" means something received as payment for a service and thus encompasses a "fee." (The American Heritage Dict. (2d ed. 1982) p. 301.)

record discloses that the county has been paying the standby connection fee and bimonthly *users fee* in accordance with the district's rate schedule applicable to all users of its facilities and that it will continue to do so." (*Id.*, at p. 660, italics added.)

*Idyllwild* cites with approval 19 Ops.Cal.Atty.Gen. 195 which determined "a charge for the use of sewerage facilities would not, in our opinion, fall within either category [taxes or special assessments]." (19 Ops.Cal.Atty.Gen. 195, 197 (1952).) Parenthetically we note the language in section 25825, addressing compensation for the use of sewerage facilities, tracks that of section 25823. Section 25825 allows the board to "make and enforce all necessary and proper regulations for the use of sewerage collection, treatment and disposal facilities not in conflict with the Constitution and the laws of the state. The board may *collect compensation from* private or *public parties* for the connection to and *use* of sewerage collection, treatment and disposal facilities." (Italics added.) The board may also collect compensation from school districts for the use of its solid waste disposal facilities.[5]

### III

█ The school districts fare no better by invoking the protection of section 6103[6] which exempts public entities from payment of fees for official services rendered by other public entities. First, "section 6103.11 specifically removes from the prohibition of section 6103 'any fee or charge for official services required by Title 7.3 . . . .'" (*Garden Grove Sanitary Dist.*, *supra*, 162 Cal.App.3d 842, 852.) Title 7.3 is the Solid Waste Management and Resource Recovery Act which authorizes the fees in question. (*Id.*, at p. 852.)

---

[5]The board's August resolution (amending the earlier ones to lower the user fees) states, "this Board finds that the operation of solid waste landfill sites and transfer stations requires operating expenses, including employee wage ranges and fringe benefits of $5,007,396 for fiscal year 1982-83 and $5,093,396 for fiscal year 1983-84; and in excess thereof for subsequent years, purchasing or leasing supplies, equipment or materials of $7,487,709; meeting financial reserve needs and requirements of $500,000; and obtaining funds for *capital projects* necessary to maintain service within existing service areas of $4,901,790 for fiscal year 1982-83 and $7,815,790 for subsequent fiscal years, . . ." (Italics added.) Appellants contend the underlined portion brings the fees within the prohibitions expressed in *Idyllwild*. However, the resolution refers only to projects necessary to maintain *service* and is equally applicable to all users of the facilities. Moreover, the resolution further provides estimated gate fees of $10 million for fiscal year 1982-1983 *plus contributions by the County of Orange* will meet those expenses. The estimated fees clearly will not even cover the operating expenses (the first two items). Thus, even were we to question the inclusion of "capital projects," they are not covered by the gate fees.

[6]Section 6103 provides, "Neither the state nor any . . . district . . . shall pay or deposit any fee for the filing of any document or paper, for the performance of any official service, . . ."

Second, section 6103 by its terms "does not apply . . . where it is specifically provided otherwise." Section 25823 specifically provides otherwise: "The board may *collect compensation from* private or *public parties* for the right to dump . . . ." Moreover, section 6103 was enacted in 1943 while section 25823 was added in 1947. Being the later and more specific provision and "dealing expressly with a particular subject [it] controls and takes priority over a general statute." (*Mitchell* v. *County Sanitation Dist.* (1958) 164 Cal.App.2d 133, 141 [330 P.2d 411].)

Third, there is a strong argument for the proposition section 6103 does not apply to the imposed user fees regardless of resort to sections 6103.11 and 25823. Section 6103 (no district shall pay or deposit a fee for any official service) derives from former Political Code section 4295 which provided in pertinent part: "State, county and township officers shall not perform any official services unless upon the payment of such fees as are prescribed by law for the performance of such services, except . . . in the following cases: . . . (2) . . . neither the state nor any county, city and county, city, district, or other political subdivision . . . shall be required to pay or deposit any fee for the filing of any document or paper, or for the performance of any official service." Subdivision (2) of former section 4295 mirrors present section 6103. However, the former follows a description of "official services," i.e., those for which fees are *prescribed by law*. The fees in the instant case are within the *discretion* of the county board of supervisors pursuant to section 25823. The school districts are not exempt from payment of the user fees.

The judgment is affirmed.

Trotter, P. J., concurred.

**CROSBY, J.,** Concurring.—I can find no fault with the preceding legal exposition and concur in the judgment of the court, not without misgivings, however. Although it is true "'some school districts have old buildings which require expensive maintenance; some have a disproportionate number of older teachers entitled to higher salaries; some must spend excessive amounts for security, and for the repair of vandalized buildings[;] [s]ome high schools in remote parts of the State have only a few students and must maintain costly classes for less than ten students[;] [s]ome schools must insulate rooms to keep out distracting noise from airports or freeways[; and] [s]ome are located in parts of the State where climatic conditions require unusually high expenditures for heating or air conditioning'" (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 760 [135 Cal.Rptr. 345, 557 P.2d 929]), these special burdens contain a common element: They are simply unavoidable.

By contrast, the user fee the County of Orange adds to the strained budget of local school districts *is* avoidable. The county could exempt schools from the fees and, if necessary, spread the additional cost by raising the user fee slightly to commercial and private users. I would think an enlightened county government cognizant of the inability of individual school districts to increase taxes to meet rising costs after *Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 681, 487 P.2d 1241] would do everything possible to avoid adding to the list of costly disparities for local school districts—and ultimately the students themselves—to bear. Unfortunately, that is a political judgment, not a legal one, and beyond our power to reconsider.

A petition for a rehearing was denied February 26, 1985, and appellants' petition for a hearing by the Supreme Court was denied April 3, 1985.