BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE GEORGE RUNNER, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city impose storm drainage pollution abatement charges with respect to property owned by school districts and the California Department of Transportation within the city's boundaries to fund the city's activities in meeting federal stormwater discharge requirements?
 CONCLUSION
A city may impose storm drainage pollution abatement charges with respect to property owned by school districts within the city's boundaries to fund the city's activities in meeting federal stormwater discharge requirements if the activities do not include the construction of capital improvements; a city may not impose such charges upon the California Department of Transportation since the department itself must meet the federal requirements for its own properties and activities.
 ANALYSIS
The question presented for resolution concerns a city's activities in meeting federal clean water requirements. The federal mandates, set forth in the National Pollutant Discharge Elimination System Program of the Federal Water Pollution Control Act (33 U.S.C. § 1251-1387; "Act")[1]
require the city to implement a stormwater clean-up and maintenance program to prevent pollutants from being carried to navigable waters through the city's system of storm drains. The federal requirements have various components such as inspecting construction projects, monitoring the chemical composition of stormwater runoff, sweeping streets, educating the public concerning the prevention of stormwater pollution, collecting household hazardous waste materials, cleaning catch basins periodically, and preventing sewage spills from entering any storm drains.[2]
In order to cover the cost of its permit compliance program, the city council has adopted an ordinance establishing storm drainage services as a utility enterprise of the city and has passed a resolution establishing storm drainage pollution abatement charges applicable to all parcels of property in the city, apportioned in accordance with a per-parcel runoff formula. The city seeks payment of the charges from school districts within its boundaries and from the California Department of Transportation ("Department"), which is responsible for the construction and maintenance of certain roadways within the city. We conclude that the school districts are required to pay the charges if no capital improvement construction would be funded by the charges and that the Department is not obligated to pay the charges since it must meet the federal requirements for its own properties and activities as a "co-permittee" with the city.
Health and Safety Code section 5471[3] expressly authorizes cites to establish charges for their storm drainage services. Section 5471 provides:
 ". . . [A]ny entity shall have power, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees, tolls, rates, rentals, or other charges, including water, sewer standby or immediate availability charges, for services and facilities furnished by it, either within or without its territorial limits, in connection with its water, sanitation, storm drainage, or sewerage system. . . . Revenues derived under the provisions in this section, shall be used only for the acquisition, construction, reconstruction, maintenance, and operation of water systems and sanitation, storm drainage, or sewerage facilities, to repay principal and interest on bonds issued for the construction or reconstruction of these water systems and sanitary, storm drainage, or sewerage facilities. . . ."
Accordingly, the charges in question are statutorily authorized. The only issue is whether some exemption applies to government owned property.
Under Article XIII, section 3, subdivision (b) of the California Constitution, property owned by public entities, such as school districts and the Department, is exempt from property taxation. Publicly owned property is also impliedly exempt from "special assessments" which cannot be charged unless the Legislature expressly so authorizes. (San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154,161; Inglewood v. County of Los Angeles (1929) 207 Cal. 697, 703-704.) A special assessment is "a compulsory charge placed by the state upon real property within a pre-determined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement therein." (San Marcos Water Dist. v. San Marcos Unified School Dist., supra, 42 Cal.3d at p. 161; Spring Street Co. v. City of Los Angeles (1916) 170 Cal. 24, 29.) Special assessments "are levied for local improvements which directly benefit specific real property." (Solvang Mun. Improvement Dist. v. Board of Supervisors (1980)112 Cal.App.3d 545, 552-553.)
As explained in San Marcos Water Dist. v. San Marcos Unified School Dist., supra, 42 Cal.3d 154, the exemptions for property taxes and special assessments do not extend to fees for goods or services such as "user fees":
 "The rationale behind a public entity's exemption from property taxes and special assessments is to prevent one tax-supported entity from siphoning tax money from another such entity; the end result of such a process could be unnecessary administrative costs and no actual gain in tax revenues. [Citation.] On the other hand, when one tax-supported entity provides goods or services to another, neither the California Constitution nor decisional law exempts the public entity from paying for these goods or services." (Id. at p. 161.)
In San Marcos, the Supreme Court determined that a water district's "sewer capacity fee" was a special assessment and therefore could not be collected from school districts. The fee in question had some characteristics of a special assessment (one time charge, not based on actual use) and some characteristics of a user fee (charge only applies to users, based on anticipated use). In 71 Ops.Cal.Atty.Gen. 163, 165 (1988), we summarized the holding of San Marcos:
 "The court pointed out that normally a special assessment (1) covers the cost of constructing a capital improvement, (2) is based upon the value of the improvement to the property benefitted, (3) is compulsory in nature and unrelated to actual use of the improvement, and (4) is often imposed as a one-time charge. The court observed that a typical user fee (1) covers the furnishing of goods or services, (2) is based upon the amount of usage, (3) is voluntary in nature since actual use triggers the fee, and (4) is often imposed as a monthly or other ongoing charge. [Citation.]
 "Some fees, however, have characteristics of both a special assessment and a user charge. The court concluded that as for these hybrid fees, it was not significant what the fees were called, upon whom they were imposed, or the basis upon which they were assessed. Rather, the court concluded that the use of the revenues collected determined whether they were special assessments or user charges. If the fees were to help defray the costs of constructing a capital improvement, they were special assessments and required express legislative authorization to be collected from a public entity. If the fees were to help pay for ongoing services provided, they were user charges, and no express authorization was necessary. [Citation.]"
Here, section 5471 does not expressly authorize collection of storm drainage fees from public agencies. Hence, the fees cannot be collected from school districts or the Department if they are used to fund the construction of capital improvements.
We reject the suggestion that Government Code section 6103
prohibits a city from imposing any stormwater pollution abatement charges on other public entities regardless of the use of the funds. The statute provides in part:
 "Neither the state nor any county, city, district, or other political subdivision, nor any public officer or body, acting in his official capacity on behalf of the state, or any county, city, district or other political subdivision, shall pay or deposit any fee for the filing of any document or paper, for the performance of any official service, or for the filing of any stipulation or agreement which may constitute an appearance in any court by any other party to the stipulation or agreement. This section does not apply to the State Compensation Insurance Fund or where a public officer is acting with reference to private assets or obligations which have come under his jurisdiction by virtue of his office, or where it is specifically provided otherwise. No fee shall be charged for the filing of a confession of judgment in favor of any of the public agencies named in this section."
A user fee is not a fee for an "official service" such as filing court documents. Government Code section 6103 does not exempt agencies from paying for the goods and services that they use. (See 40 Ops.Cal.Atty.Gen 15, 20-21(1962) [permit fees and inspection fees, but not fees to insure county, are exempt].) Furthermore, as observed by the court in Anaheim City School Dist. v. County of Orange (1985)164 Cal.App.3d 697, 702, it appears from the legislative history of Government Code section 6103 that an "official service" is one for which fees are prescribed by law. Like the fees to use the county's solid waste disposal site in the Anaheim case, the fees here are not prescribed by law but rather are discretionary.
Finally, we note that although both state and local public agencies may be subject to user fees imposed by a city (see 19 Ops.Cal.Atty.Gen. 195, 197-198 (1952)), in the present situation the school districts and the Department do not stand in the same position relative to the city. Unlike the school districts, the Department also holds a federal permit, having specific rights and obligations that parallel those of the city. The Department is responsible for its own properties and activities, including the storm drains that it owns. Its activities are not the responsibility of the city under the federal requirements. Since the Department must ensure that the stormwater runoff from its roadways and facilities meets the federal standards, the city has no basis upon which to levy charges against the Department for the city's own compliance activities.
Accordingly, we conclude that a city may impose storm drainage pollution abatement charges with respect to property owned by school districts within the city's boundaries to fund the city's activities in meeting federal stormwater discharge requirements if the activities do not include the construction of capital improvements; a city may not impose such charges upon the Department since the Department itself must meet the federal requirements for its own properties and activities.
[1] Section 301 of the Act prohibits the discharge of any pollutant to navigable waters from a "point source" unless the discharge is authorized by a national pollutant discharge elimination system permit.
[2] Regarding municipal discharges, section 402(p)(3)(B) of the Act provides:
 "Permits for discharges from municipal storm sewers — (i) may be issued on a system — or jurisdiction-wide basis; (ii) shall include a requirement to effectively prohibit non-stormwater discharges into the storm sewers; and (iii) shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." (33 U.S.C. § 1342 (p)(3)(B).)
[3] All reference hereafter to the Health and Safety Code are by section number only.